## THE MOHAWK BANK *vs.* BRODERICK & POWELL.

A *post-dated bank check*, like a check bearing date on the day it is issued, is payable on *demand*, and not at a *day certain.*

Demand of payment of a check must be made with *reasonable diligence*, according to the ordinary course of business; what shall be deemed such *diligence*, depends upon the circumstances of each particular case.

Where a check drawn upon one bank was received by another in deposit, and kept for 23 days before presentment, (the distance between the two banks being only 16 miles, and a daily mail passing between the places in which they were located,) *it was held*, that the holders not having used due diligence in making the presentment, were not entitled to sustain an action against the payees, who had negotiated the check.

The negotiation and circulation of a *bank check*, does not dispense with the necessity of *demand of payment* within a reasonable time.

The question of *laches* is a question of law, when there is no dispute as to the facts of the case.

ERROR from the supreme court. The defendants were sued as the *endorsers* of a *check* drawn in their favor by J. Le Breton, on the Mechanics' and Farmers' Bank of *Albany*. The check bore date on the 14th January, 1830; and *several days previous* to its date, the defendants transferred it to one J. Myers, who, on the day of its date, deposited it in the *Mohawk Bank* at *Schenectady*, by which bank it was received, and entered to the credit of Myers *as cash*. The bank retained the check until the *third* day of *February*, when they sent it to Albany, and three days thereafter a demand was made at the Mechanics' and Farmers' Bank, and payment refused, of which notice was forthwith given to the defendants. Le Breton, on the 14th January, was a merchant transacting busines in Albany, and continuing such business until the *first* of February, when he stopped payment. He had no funds

in the Mechanics' and Farmers' Bank on the 14th January, or at any time since. On the *fourth* of February, however, he made good his account at that bank, which he had overdrawn $90 previous to the 14th of January. During all the month of *January*, and until he stopped payment, he was insolvent, but had no debts falling due, except the above check. After he stopped payment, and until his death, he remained insolvent. The course of business of the Mohawk Bank was to make its exchanges with the Albany banks once in *three weeks;* when it had notes payable at Albany, they were sent, when nearly due, to the banks there for collection, although the usual time for making exchanges had not arrived. From the 14th January to the 3d February, no packages or notes were sent or exchanges made by the Mohawk Bank with the Albany banks. A daily mail passes between Schenectady and Albany. The above facts were found in a *special verdict*, and the supreme court rendered judgment thereon for the *defendants*. See the opinion delivered in the supreme court, 10 *Wendell*, 304. The plaintiffs sued out a writ of error.

A. C. Paige, for the plaintiff in error.

M. T. Reynolds, for the defendants in error.

The following opinion was delivered:

By the CHANCELLOR. The check in this case was postdated as of the 14th of January, although actually drawn and negotiated before that time. Hence it is insisted, in behalf of the defendants, that it must be considered as if it was dated at the time it was actually drawn, and was made payable on a *day certain*. The court below was right, however, in treating it as a bill or check, payable at sight, or upon the presentment thereof at the bank, at any time on or after the day of its date, but not before; or, in other words, so far as concerns the question of presentment and notice of non-payment, it is to be considered as if drawn, as well as dated, on the 14th of January. The drawing of post-dated checks is

an every day's occurrence in our commercial cites; and, I believe the uniform understanding of the parties in such cases is in accordance with the construction which the supreme court has given to the transaction in the present case.

It is not necessary, for the decision of this case, to inquire whether any greater degree of diligence is to be used by the holder of a negotiable check upon a bank, in presenting it for payment, than is required from the holder of a similar draft, at sight, upon an individual. Both are at times made and negotiated for the avowed purpose of a temporary circulation; and when made for such a purpose, I can see no good reason for requiring of the holder any greater degree of diligence in the one case than in the other. The true rule as to both undoubtedly is, that the holder must use reasonable diligence, according to the ordinary course of business in other cases of a like nature; and what is such reasonable diligence must, in some measure, depend upon the particular circumstances of each case. For instance, a person residing in Schenectady gives me his check upon a bank in Albany in payment of an antecedent debt, or gives me his draft upon an individual residing in the same place, under similar circumstances; I should not, in either case, be authorized to send the check or bill to my correspondent at New Orleans, to be laid out in the purchase of sugar or cotton, and hold the drawer liable for the solvency of the bank or the drawee of the bill, in the mean time, because that is not the ordinary course of business, and he could not, therefore, have contemplated such a risk; but if I had purchased the check or bill of the drawer, for the purpose of being sent to New Orleans and to be negotiated there, and, with his knowledge, he would then have assumed the risk of the solvency of the drawee, until the check or bill was returned and presented for payment, according to the usual course of trade in such cases. Such I understand to be the effect of the decision of the court of common pleas in England, in the case of *Muilman* v. *D'Eugino*, 2 *H. Black.* 565, which case was principally relied on by the counsel for the plaintiffs in error, for the purpose of showing that a less degree of diligence was required, where a bill had been actually negotiated, than would otherwise have been required.

ALBANY,
Dec. 1834.

Mohawk Bank
v.
Broderick.

In that case, the controversy was between the endorser and the endorsee of five bills of exchange which had not been accepted, the drawers having failed. The bills were drawn in London upon a house in Calcutta, and were endorsed and sold by the defendant, in a negotiation upon the royal exchange, to the plaintiffs, as agents for a French house at Paris, that had instructed them to purchase bills on India for the purpose of remittance. The bills had not been sent by the first ship to India, because. it became necessary for the plaintiffs to write to their correspondents at Paris and obtain the necessary instructions as to the persons to whom the bills should be sent at Calcutta; and the bills were actually sent by the first ship that sailed after such instructions were received. It was in reference to the particular circumstances of that case that *Chief Justice Eyre* remarked that it would be a serious and difficult thing to say that a person, buying a foreign bill in the way that those bills were bought, should be obliged to transmit it by the first opportunity to its place of destination; and that there would also be great difficulty in saying at what time such a bill should be presented for acceptance. It is also in reference to bills which, by the ordinary course of trade, are put in circulation, or which, in a particular case, were made or endorsed for the puspose of being thus used, that *Buller, J.* remarks that they should be put in circulation to prevent the drawer or endorser from being discharged on account of laches; that if, instead of putting a bill into circulation, the holder were to lock it up for any length of time, he must be considered as guilty of laches. I do not understand these expressions to mean, that where a check or bill is once put in circulation, it changes its character so as to excuse subsequent holders from the same diligence which would have been requisite if they had been the original payees. It is only meant that each successive holder should either negotiate the bill or check, according to the usual course of business, or should cause it to be presented for acceptance and payment; and that if he did neither the one or the other, but locked it up for an unreasonable length of time, he would be guilty of laches, which might discharge

those who were contingently liable to him as drawers or endorsers.

Most of the difficulties on this subject have arisen from a laudable anxiety on the part of the courts to adopt, in commercial cases, as far as practicable, fixed and certain rules as to what shall be considered reasonable diligence, so that the holders of commercial paper, and those who are contingently responsible for its payment, may be able to understand their several rights and duties in each particular case which may arise. For this purpose, they have endeavored to settle, as a question of law, what, from its very nature, must in most cases be a mere question of fact. It however seems to be the settled law in this state, that if there is no dispute about the facts, or when the facts of the case are ascertained, the court is to determine the question whether the holder of a bill has been guilty of laches. This is but saying, in other words, that the question of reasonable diligence is a mixed question of law and fact, to be decided by the jury, under the direction of the court upon a general verdict, or to be decided by the court where all the facts and special circumstances of the case are found by a special verdict.

The question to be decided in this case, therefore, is whether, upon the facts found by this special verdict, it is perfectly clear and evident that there have been laches, on the part of the plaintiffs in error, in the presenting of this check for payment; if so, the judgment of the supreme court is right, and must be affirmed. But on the other hand, if the facts found by the special verdict clearly show that due diligence was used, then the judgment is wrong, and must be reversed; and if the facts found by the jury, in connection with other facts, which the court may reasonably presume to have existed, leave it doubtful whether due diligence has been used, then the special verdict is defective, and the case must be sent back for a new trial. I think we should lay out of the question, the facts found by the special verdict as to the usual course of exchanges between the Mohawk bank and the banks in the city of Albany, as there is no pretence that this check was drawn or endorsed with a view of its being nego-

negotiated or cashed at the Mohawk Bank, or that there was any usage of trade from which the defendants had reason to suppose it would be collected through that bank. The check was endorsed by the defendants, and sold to Myers several days before the fourteenth of January, the day on which the bill was dated. On the last mentioned day, it was received of Myers as cash by the bank; and though a daily mail ran between Schenectady and Albany, they kept it twenty days before it was sent to Albany; and it was not presented for payment until the sixth of February, six days after the drawer of the check failed, or stopped payment. Upon these facts, I think no court or jury could hesitate in deciding that the holders of this check did not make use of reasonable diligence in presenting it for payment, but, on the contrary, that there had been gross negligence in this respect. Besides, from the facts found by the special verdict, there is reason to believe that the loss of the amount due upon the check might not have occurred, if reasonable diligence had been used in presenting the check for payment.

I therefore am for affirming the judgment of the supreme court.

The court being unanimously of opinion that the judgment of the supreme court ought to be affirmed, it was accordingly *affirmed*.