## SMITH *vs.* JANES.

*Checks* are governed in several particulars by the same rules that prevail in relation to *inland bills of exchange* payable either *on demand* or at a given number of days *after sight.*

The holder of a check can recover against the *endorser* only when he has used *due diligence* in presenting or giving notice of demand and non-payment.

Where the parties all reside in the same place, the check should be presented on the day it is received, or on the following day; and when payable at a different place from that in which it is negotiated, it should be *forwarded by the mail* on the same or next succeeding day for presentment.

No greater diligence is necessary in presenting *checks* for payment, than is required in relation to *bills of exchange.*

In an action by a *second endorsee* of a check against the payee, *laches* on the part of the first endorsee *will not be presumed;* if there was negligence on his part it must be affirmatively shown by the defendant.

So where the *second endorsee* has put the check *in circulation, laches* will not be presumed in a subsequent holder, where the bill was in circulation only four or five days after the second endorsee parted with it, before it was sent for presentment; if there be a default the burden of the proof rests upon the defendant.

But where, by the course of the mail, the check may be presented in *three days;* and the holder instead of putting it in circulation, *holds it in his possession* seven or eight days, he is chargeable with want of due diligence.

*How long* a bill or check, payable *on demand* or at a given number of days *after sight, may be kept in circulation* before presentment, without discharging an endorser, is an unsettled question. Each case must be determined by its own circumstances.

Where a *second endorsee* of a *check* on receiving it *put it in circulation,* and not more than *four* or *five* days elapsed thereafter before it was sent for presentment, *it was held,* in an action by him against the payee that he was not chargeable with *laches;* there being no evidence in the case but that he became the holder on the day it was negotiated by the payee.

Where a *notary* certifies that he deposited in the post-office notices of protest *for* the the endorsers, it will be presumed that such notices were *directed* to them.

THIS was an action of assumpsit tried at the New-York circuit in June, 1838, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff as endorsee, sued the defendant as endorser of two *checks* drawn by *B. Rathbun,* on the Commercial Bank of Buffalo : one for $2,000, dated July 17, 1836, payable to the order of and endorsed by the defendant, who resides in the city

of New-York.   It was endorsed and negotiated to the plaintiff, in the city of New-York, by *Wood & Bogert*, of that place, on the 27th or 28th day of July, and the plaintiff on the same day endorsed and negotiated it to *F. H. Pepoon.*   The check was presented at the bank and protested for non-payment on the 4th August, 1836.   No account was given of the check between its date and the time it was negotiated to the plaintiff, nor between the time that the plaintiff put it in circulation and the day of presentment and protest.   The course of the mail at that time between New-York and Buffalo was three days each way.   The other check was for $3,000 ; and the facts concerning it were the same as in relation to the $2,000 check, except it was dated July, 28, 1836, was negotiated by *Wood & Bogert* to the plaintiff, on the 29th or 30th day of that month, and by the plaintiff to *Pepoon*, on the same day, and was presented at the bank, and protested for non-payment on the 9th of August following.

The certificate of the notary in each case, after stating the demand, &c. at the bank in Buffalo, proceeded as follows: " I further certify that on the same day and year above written, I deposited in the post-office notices of the foregoing protests for F. H. Pepoon, Albany, John T. Smith, New-York, Wood & Bogert, New-York, Horace Janes, New-York, E. Olcott, Albany."

The defendant moved for a non-suit, on the grounds: *first* that the checks were not presented in due season to charge the defendant as endorser ; and *second*, that the proof of notice of protest was insufficient, for the reason that the notary had not certified that the notice was directed *to* the defendant.   The judge refused the motion, and the defendant excepted.   Verdict for the plaintiff.   The defendant moves for a new trial.

*J. A. Spencer*, for defendant.

*R. Lockwood*, for plaintiff.

*By the Court*, Bronson, J.   In several particulars, checks are governed by the same rules that prevail in relation to inland

bills of exchange, payable either on demand, or at a given number of days after sight. The holder can recover against the endorser only when he has used due diligence in presenting the check, and giving notice of the demand and non-payment by the bank. When the parties all reside in the same place, the holder should present the check on the day it is received, or on the following day: and when payable at a different place from that in which it is negotiated, the check should be forwarded by mail on the same or the next succeeding day for presentment. It has been said that greater diligence is necessary in presenting checks for payment, than is required in relation to bills of exchange. *Gough* v. *Staats*, 13 *Wendell*, 549. But I can see no good reason for making such a distinction. The fact that one instrument is drawn upon a bank, and the other upon an individual, can make no difference in principle concerning the duty of the holder; what will be due diligence in the one case will, I think, be due diligence in the other. *Mohawk Bank* v. *Broderick*, 13 *Wendell*, 133.

As the questions are substantially the same in relation to both checks, I shall only notice that for $2,000, dated July 17, 1836. If this check was negotiated to Wood & Bogert on the day of its date, and retained by them ten or eleven days until it was passed to the plaintiff, the defendant would be discharged; but it does not appear when, or to whom the check was first negotiated. It may have been transferred by the payee to Wood & Bogert, on the same day they sold it to the plaintiff, or if negotiated before that time it may haved passed through several hands before it was taken by Wood & Bogert. This is not a case where we can presume laches. The defendant is the payee of the check, and must know when and to whom it was first transferred; and the burden lies on him of making out a default in some holder of the check, before it came to the hands of the plaintiff.

The course of the mail between New-York and Buffalo, was only three days, and as seven or eight days elapsed between the time the plaintiff took the paper, and the day it was presented to the bank for payment, the plaintiff would be chargeable with

Smith *v.* Janes.

a want of due diligence, if he had not put the check in circulation. But he sold it to Pepoon on the same day it was received, and there is no proof of neglience in Pepoon or any subsequent holder of the paper.   If the defendant intended to rely on any default after the check passed from the plaintiff, the burden of making out the case lay upon him.   We cannot presume laches, especially in a case where the paper was in circulation for so short a period.   How long a bill or check, payable on demand, or at a given number of days after sight, may be kept in circulation before presentment, without discharging some of the parties, is not a settled question.   *Chitty on Bills,* 276, *ed. of* 1826.  It depends in a great degree on the circumstances of each particular case. In *Robinson* v. *Ames,* 20 *Johns. R.* 146, the bill was drawn in *Georgia* on merchants residing in *New-York,* and although 75 days elapsed before the presentment, it was held that the drawers were not discharged.   In *Gowen* v. *Jackson,* 20 *Johns. R.* 176, the bill was drawn in *Antigua,* on merchants residing in *London,* and having been put in circulation, it was held that the drawer was not discharged, although six months had elapsed before the presentment.   In *Aymar* v. *Beers,* 7 *Cowen* 705, the bill was drawn in *New-York* on a house in *Richmond, Va.,* at three days sight, and it was held that the drawer was not discharged by a delay of 29 days in presenting the bill for acceptance.   The bill had not been put in circulation, but there were other special circumstances to show that the payee was not chargeable with negligence.   In the case at bar, three days were necessary for the transmission of the check from New-York to Buffalo, and it could not have been in circulation after it passed from the plaintiff, more than four or five days before it was presented at the bank for payment.   There is no authority for imputing laches on such a state of facts, and the judge was right in overruling the objection.

The official certificate of a notary is, in certain cases, declared presumptive evidence of the facts which it contains.   *Laws of* 1833, *p.* 395, § 8.   It is not denied that the certificate was properly in evidence, but it is said that the facts stated by the notary

do not prove due notice. Several objections to the sufficiency of the proof were mentioned on the argument, but this is a bill of exceptions, and we cannot look beyond the particular objection taken on the trial. The defendant resided in New-York, and payment was demanded at Buffalo. The notary certifies that on the same day he " deposited in the post-office notices of the foregoing protest, for—Horace Janes, New-York." The objection on the trial was, that the notary had not certified that the notice was *directed* to the defendant. When a public officer, in the course of his official duty, certifies that he deposited a notice in the P. O. *for* a particular person, it is, I think, but a reasonable intendment that the notice was *directed* to that person. We cannot presume the contrary without imputing a gross dereliction of duty to the officer.

New trial denied.