By the Court.
Duer, J.
My brethren concur with me that the jury upon the evidence before them were properly instructed to find a verdict for the plaintiffs. There was no disputed fact, and the law upon the facts proved entitled the plaintiffs to recover.
It is not necessary now to decide whether the denial in a sworn answer of the reception by the defendant of a notice of protest satisfies the statute which requires the denial to be made in an affidavit. Certainly, such a denial has no proper place in an answer under the code, which should be confined to a denial or averment of those facts, and of those only which are necessary to be proved, in order to maintain the action or defence. The reception of such a notice, it is plain, is not an issuable fact, for the plaintiff is not bound to aver it, and when a due service of the notice is proved, whether it was received or not by the defendant, is quite immaterial. Hence, the denial of its reception, in an answer, might very properly be stricken out as irrelevant, and whether a denial that ought not to be found in his answer at all ought to avail the defendant for any purpose may certainly be doubted.* •
But we may well pass over the question now, since it is very clear that the answer of this’defendant contains no denial whatever of his reception of the notice, which the complaint alleges to have been served. On the contrary, it admits by a necessary implication that the notice was received by him after the 14th of December, 1858, and is therefore entirely consistent with the certificate of the notary, which states the service to have been made on the 19th of the same month. ¥e add, that the denial of the reception of a notice of protest which is to have the effect of excluding the certificate of the notary and of imposing upon the plaintiff the necessity of proving the service, of the notice by *129 the testimony of a witness, in our opinion, must be, in all cases, positive, unequivocal, and unqualified. A denial wbicb has no tendency to disprove the certificate is nugatory.
It has been urged, however, that the terms of the denial in the present case are, at least, a sufficient allegation that there was an unreasonable delay in the presentment of the check, and in giving notice of its dishonor, but this seems to us a very forced construction. Nor can we think that the terms of the denial were ever intended to raise such an issue. The laches of a plaintiff, when it constitutes a defence is an issuable fact, and when a defence is meant to be relied on, the existence of the fact ought to be distinctly averred. It cannot be said that there is such an averment in the answer before us; there is a possible suggestion, a remote inference, and nothing more.
But passing over this objection, that the defence of an unreasonable delay is not raised by the answer, we are satisfied that the allegation itself is founded on a mistaken view of the existing law. It may be true, as a general tule, that a check payable on demand ought to be presented for. payment at the bank on which it is drawn, if not on 'the day, yet on the day next after that on which it is dated.—(Moule v. Brown, 4 Bing., N. C. 268, 5 Scott, 694, 2 Taunt. 388, 2 Camp. 539, 10 Wend. 304; Mohawh Bank v. Broderick, 13 Wend. 133.) But it is not true that the omission so to present it, or even a delay in its presentation, of several months, if not years, ever operates of itself to discharge the drawer. The cases very clearly show that the rules that govern the presentment of a check, and notice of its dishonor, as between a holder and the drawer, are far less stringent than those that apply to the relation of a drawer and an endorser. To charge an endorser, at least the same diligence is required as in relation to bills of Exchange, (20 Wend. 192; but, as between a bond fide holder and the drawer of a dishonored check, no delay in demanding its payment is deemed to be so unreasonable as to bar a recovery by the holder, unless it appears that it worked an actual injury or loss to the drawer. Such is the rule that was laid down by the Supreme Court at an early day in Conroy v. Watson, (3 John., Ca. 258, 264,) and which, with full approval, was adopted and followed by the same court in Murray v. Indal, *130 (6 Cow. 484,)* and sucb appears now to be tbe established law in England, (Serle v. Norton, 2 Mood, and Rob. 401; Alexander v. Burchfield, 3 Scott, N. R. 585, 9 Mann. and Grang. 1067, S. C.) Hence, although in the present case there was a delay in demanding payment of the check, from the 5th of September to the 19th of the following December, we cannot say upon the evidence before us that the delay could operate to discharge the defendant— there is no evidence of a laches by which he was prejudiced.
We are thus brought to the last and most important question in the cause. Evidence to show that the defendant was prejudiced by the holder’s delay in giving notice of the non-payment of the check we are told was offered on the trial, and was rejected by the Judge. He therefore rejected evidence which it is admitted would have shown a valid defence, and for this error, were there • no other, the judgment should be reversed. It certainly appears Rom the case, that evidence tending to show that the defendant was prejudiced by the imputed laches of the plaintiffs, was offered to be given, and was rejected; but when we look at the nature of the offer and of the facts which it embraced, we are satisfied, upon "the fullest reflection, that the evidence was properly rejected. It was properly rejected not only because the answer contains no allegation, nor pretence of an allegation, that the defendant had been injured by an unreasonable delay, but because the facts offered to be proved, had the proof been admitted, would have created no bar to the plaintiffs’ recovery. In other words, were in reality no defence.
The facts offered to be proved are briefly that the defendant received no consideration for the check, but lent it to a third person, one Huestis, who promised to deposit to the defendant’s credit, in the bank upon which the check was drawn, the necessary funds for its payment. That Huestis, shortly before the 19th of December, the day on which notice of the protest of the *131 check was served, became insolvent, and that, bad payment of the check been demanded, and notice of its non-payment been given before his insolvency, the defendant might and would have obtained security from Huestis that would have saved him from the loss, that, if the judgment stand, he must incur. To these facts another must be added, which although not distinctly offered to be proved, the offer made of necessity embraced, namely, that Huestis made no deposit of funds for the payment of the check, to the credit of the defendant, for had this deposit been made, as it could not have been withdrawn by Huestis, the defendant would have sustained no loss from his insolvency. Having the funds, he would require no security. Hence it is plainly to Huestis’s breach of promise that the defendant’s loss must be ascribed.
In considering the question whether the facts thus stated constitute a defence, it must be remembered, that it is not pretended that the plaintiffs knew or had any reason to suspect that the check was an accommodation check when they received it, and also that they received it and paid full value for it on the very day upon which it is dated. In other words, it must be remembered, that they are bond fide holders for value. And the question is, whether the rights of such a holder to enforce the payment of a check, can be defeated'by proof of a secret agreement between the drawer and a third person, and of the consequences that from the breach of the agreement resulted to the drawer? Is the holder to lose the moneys, that he advanced upon the name and credit of the drawer, because the latter was deceived and cheated by the person to whom the check was originally issued? We apprehend not. We apprehend that reason, policy and the law,- alike reject the supposition.
The holder to whom a check has been passed for value, has certainly a right to believe that it was made on a valuable consideration, and that the drawer has, or in due season will, provide funds for its payment in the bank upon which it is drawn. It is this duty that the law imposes on the drawer, and which, when he issues the check, he undertakes to perform; and we cannot believe that the innocent holder is to suffer because, without his knowledge, at the instance and for the benefit of a third person, this duty has been violated. There is doubtless an equity beween the drawer of an accommodation check and the person, to whom *132 it is lent. As between them, tbe latter is bound to pay it; but it is an universal rule tbat tbe rights of a bolder for value of negotiable paper can never be impaired or affected by a secret equity, —an .equity of wbicb be bad no knowledge or suspicion, or in legal pbrase, actual or constructive notice. It is upon a strict adherence to this rule tbat tbe value of such paper, as negotiable, mainly depends, and hence tbe most enlightened Judges have said tbat tbe strongest reasons of public convenience and policy demand its observance. Tbe rule is at least as applicable to checks as to promissory notes and bills of exchange, and when thus applied, it follows tbat .the drawer of an accommodation check can never be permitted to set up a defence against a bolder for value, and without notice, that would not be competent and available bad be received value for tbe check when be delivered it. He can found no defence upon tbe fact, tbat as between him and tbe person to whom be delivered the check, it was without consideration. It is, however, upon this foundation tbat tbe de-fence wbicb was offered to be proved in tbe present ease, plainly rested, and I therefore retain tbe opinion, in wbicb my brethren fully concur, tbat tbe evidence offered to support tbe defence was properly excluded. There is no pretence for saying tbat bad tbe defendant received value for tbe check when be delivered it, be could now be discharged from its payment.
It may be doubted whether there is any case in wbicb tbe drawer of a check, who delivered it for value, would be exonerated from its payment by a delay in its presentment, except when it appears tbat, from the failure of the bank upon wbicb it was drawn, be sustained a loss of tbe funds tbat, but for tbe delay, would have been applied to its payment; in other words, it is doubtful whether tbe bolder, by delaying bis demand of payment, takes upon himself any other risk than tbat of tbe continued solvency of tbe drawee. But, admitting tbat other cases may be stated, in wbicb, from a delay of presentment, a drawer for value would sustain a loss tbat would operate to discharge him, it is still true tbat it is in those cases only in wbicb be would be discharged, tbat an accommodation drawer would be allowed to defeat tbe claim of a bond fide bolder. It is still true tbat a distinction in bis favor can never be raised upon a fact of which the bolder was ignorant and tbe existence ,pf wbicb be bad no reason *133 to suspect and was not bound to presume. Checks which, being without consideration between the immediate parties, receive their first value from an usurious discount, may seem to be an exception from the doctrine that no other defence is competent to an accommodation drawer than to a drawer for value, but this is an exception created by statute, and, considered with attention, is more apparentthan real. Such checks are void in their origin; but those to which the doctrine, properly understood, applies, are valid when received by the holder, and the transaction by which he acquires his title is free from any taint of illegality. It is the doctrine thus explained and limited, which, as fully sustained by principle and by authority, we hold ourselves bound to follow.
We have now considered all the exceptions that, it appears from the case, were taken on the trial, and as for the reasons that have been given, we deem them all to be groundless, the judgment appealed from must be affirmed with costs.
Judgment accordingly

 The court, at June term, in a subsequent case in which it was necessary to decide the question, held that such a denial in an answer is to be wholly disregarded.

 Vide, also Etting v. Brinkerhoff, (2 Hall, 465,) and Little v. Phœnix Bank, (2. Hill. 426.) The head note of the reporter in this last ease states that it -was held by the court that the holder is bound to prove affirmatively that no loss was sustained by the drawer; but this is hardly justified by the language of the opinion, and it is difficult to believe that the court meant to say that the plaintiff was bound to prove a negative, nor did any such question arise in the case. — R