### BLACHLY & SIMPSON *v.* ANDREW & WILSON.

1. Bank checks payable at a future day, or post-dated, are not bills of exchange, and are not subject to the formalities of presentment and notice required on commercial bills.
2. The holder of a bank check is entitled to hold it, without presentment, until the close of banking hours of the day next after its date, or next after the date payable.

SPECIAL TERM.—Action on an instrument in the words and figures following, to wit:

"No. ——                              *Cincinnati, Nov.* 11, 1854.
   GEO. MILNE & Co.
              Pay to John Kugler, on the 13th, or bearer,
two hundred and twenty-one dollars and twenty-seven
cents.                             ANDREW & WILSON,
$221.$\frac{27}{100}$                        · Per R. LLOYD."

The case was submitted to the court on the following
agreed statement of facts, viz:

" On the 13th of November, 1854, and from that time until
the failure of George Milne & Co., the defendants had on
deposit, subject to their check, with George Milne & Co.,
money more than sufficient to provide for the check sued
upon. The check sued upon was made and delivered by
defendants to the clerk of the plaintiffs, on Saturday, the
11th day of November, 1854, at the store of defendants,
near the Little Miami Railroad Depot, about 6 o'clock P. M.
Plaintiffs' clerk, at the time of receiving the check, was on
his way to Loveland, his home, to spend the Sabbath, which
fact he mentioned to defendants; and on his suggestion
that the check could not be used until Monday, it was made
payable on the 13th.

Plaintiff's clerk had, unknown to the defendants, an en-
gagement at Eaton on Monday; and finding, on Monday,
that he could not reach Eaton in time, if he stopped in Cin-
cinnati to deliver the check to the plaintiffs, or to drop it
into the Cincinnati post-office, he mailed the check at
Loveland, to the plaintiffs at Cincinnati, on Monday morn-
ing, and then returned to Cincinnati, and immediately
took another train for Eaton, without being able to see
plaintiffs.

The check was taken from the post-office by plaintiffs on
the morning of the 14th of November, and was immediately
presented for payment to George Milne & Co., and payment
was refused, because George Milne & Co. had, shortly be-
fore, on the same day, stopped payment.

The plaintiffs then gave due notice to the defendants of
the presentment, on the 14th, and non-payment.

. The foregoing are agreed to be the facts of this case, without admitting their competency as evidence."

*Bates & Scarborough,* for plaintiffs.

*Coffin & Mitchell,* for defendants.

STORER, J. The plaintiffs bring their action to recover the amount of a check drawn by the defendants upon their bankers, Milne & Co., dated November 11th, 1854, and payable on the 13th of November. It is in evidence that the plaintiffs received the check from the person to whom it was delivered, on the 14th, and that they presented it the same day for payment, and were refused. It is also admitted that Milne & Co. stopped payment on the 14th, and notice of the dishonor of the check was given to the defendants in due time.

The check was drawn on Saturday, after bank hours, and at the request of the payee, made payable on the next Monday. We are asked to hold that it should have been presented on the day it was made payable, and if the day was permitted to transpire, without presentment, no presentment could be made on the subsequent day to charge the drawers. On the other hand, the plaintiffs contend that they were guilty of no *laches,* and ought to recover.

The whole question is resolved into this: did the insertion of a day for the payment of the check, in the check itself, vary the ordinary rule applicable to checks payable on demand?

In England, by a regulation of parliament, there is an essential difference between checks thus drawn; no stamp is required upon those payable on presentment, while those that are post-dated, are absolutely void unless written upon stamped paper. We can find, therefore, no parallel case to the present in the English books, though the principle upon which we may decide the present controversy, is often suggested and never controverted.

A check, unquestionably, has some of the peculiarities of

an inland bill of exchange, though in many respects it is essentially different; while it is an order or draft for the payment of money, and the rule that binds the holder of a bill to diligence, is substantially applicable, still the drawer is not discharged from his liability by the holder's failure to present in due time, unless he have sustained actual prejudice, as by the failure of the banker. This, we believe, is now the settled law. 7 M. & Granger, 1061, *Alexander* v. *Burchfield;* 9 A. & Ellis, N. S. 58, *Robinson* v. *Hawksford.*

In the last case, Williams, J., said: "If the question arises, who is to be the loser, when a banker becomes unable to pay, the point is properly raised whether the check was presented in due time; but if things remain the same, the check is still a check, and the money is money applicable to the payment, and the rule as to time does not apply." See also 2 Hill, 425, *Little* v. *Phœnix Bank;* 2 Story, 503, *Ex parte Brown;* 8 Pick. 423, *Oxford Bank* v. *Haynes.*

There has been, in some of the State courts, a conflict of opinion as to the rule by which checks, not payable on demand, should be governed.

The Supreme Court of New York held, in 21 Wendell, 373, *Harker* v. *Anderson,* that irrespective of the question of loss, or injury to the drawer, a check should be presented within a reasonable time, and the rule, as to inland bills, was regarded as applicable; this opinion was overruled, however, in 2 Hill, 425, *Little* v. *Phœnix Bank.* In 4 Yerger, 214, *Brown* v. *Lusk,* the Supreme Court of Tennessee decided the point in the same manner; so in 1 Blackford, 104, *Glenn, et al.* v. *Noble, and others.* But in 2 Story, 517, *Ex parte Brown;* 11 Metcalf, 52, *Taylor* v. *Wilson;* 5 Sandford, S. C. 327, *Bowen* v. *Newell,* it is held that a check, though post-dated or payable on a day certain, is a check still, and can not be regarded as a bill of exchange.

The counsel for both parties do not differ upon this point, and we refer only to the cases we have cited to show that there is truly no such analogy as that which it has been said existed.

6

A check can not be demanded before the day named for payment, nor yet presented for acceptance, as a bill might well be; and if refused, the drawer, being notified, would be liable. It is only when payment is due that it can be sought, and the result necessarily is, that there is no liability on the part of the drawer until the presentation for payment is made.

. The time when payment should be demanded upon a check payable generally, has been so well determined, by judicial decision, that the point can not now be safely controverted. In all cases the day subsequent to the date of the check, is now regarded as within the rule of due diligence on the part of the holder. Byles on Bills, 74; 4 Bingham, N. C. 266, *Moule* v. *Brown;* 13 Wendell, 133, *Mohawk Bank* v. *Broderick, et al.;* 20 Wendell, 192, *Smith* v. *Janes;* 4 B. & Adolph., 752, *Boddington* v. *Schlencker.*

Formerly it was held that the check must be presented on the morning of the next day after its date; it is now, however, settled that the holder has the whole of the banking hours of the next day, within which to present it. 2 Taunton, 388, *Robson* v. *Bennett;* 2 Campbell, 537, *Rickford* v. *Ridge;* 4 Barn. & Adolph. 752; Chitty on Bills, 419, 420; Story on Promissory Notes, §493.

Having ascertained the rule applicable to checks payable on demand, let us inquire in what particular those payable at a future day, or post-dated, differ from those payable generally. We have already seen that both are regarded as checks, in the popular as well as legal sense. Neither are bills of exchange, and can not therefore be subjected to the peculiar formalities required to be pursued before a drawer or indorser can be made liable upon mercantile contracts.

There is, to our apprehension, taking the rule thus stated to be the true one, no real distinction between the cases. We can perceive no more real propriety in giving to the holder of the ordinary check the right to present it on the day after it is dated, than there would be in granting the

same privilege when the check is payable on a particular day. For all practical purposes, on the day it is thus payable, it is equivalent to a check due on demand, as then the prohibition to pay it before is removed from the banker. Checks are not entitled to the days of grace, and are therefore without the rule that applies to bills of exchange; it follows then, that strictly speaking, the holder of the check should present it on the day it is payable by its terms. But in practice, long existing and universally understood, the subsequent day has been allowed to the payee, or those to whom the check has been transferred. Such a demand will subject the drawer if payment is refused, and notice of the fact given to him; though the banker meanwhile should have failed in business, the loss, if any, will fall upon the customer or depositor, not upon the holder of the check. If the drawer suffers no loss by any such occurrence, the demand for payment is not thus limited, nor is notice of a refusal required to be given to him.

If then we regard the instrument in question as a check, in the ordinary sense of the term, we know of no rule that compels us to place it in any class of instruments, where other liabilities are contracted, and duties imposed. Whether payable at a future day, or on demand, we must apply the same principle of construction to the contract.

The defendant gave his check on Saturday afternoon, payable on Monday; it was sent to the plaintiff, who received it on Tuesday morning; during that day, within banking hours, it was presented, payment refused, and the drawer notified of the fact. On Tuesday morning the bankers stopped payment, but as the holder was not bound to present it at any particular time within the business portion of the day, a demand at any time during the usual banking hours was sufficient, and the loss must fall upon the defendant.

Judgment for plaintiffs.