## THE MIDDLETOWN BANK *vs.* MORRIS & GRAVES.

A check, drawn upon a bank in the city of New York, by T., payable to the order of M., and indorsed by M. & G., and held by C., claiming to be the owner, and who resided in another state, 73 miles distant from the city of New York, and due and presentable on the 25th of May, was discounted by the plaintiff on the 28th of May, and transmitted to its agent in New York by the first mail thereafter, and the same was received by the agent on the 29th and presented to the drawee, for payment, on the 30th of May. *Held* that although the check was made eleven days before the time it bore date, and was not designed by the maker and indorsers for immediate presentation and payment, yet that, as the plaintiff received the same without notice of those circumstances, he was to be deemed a holder in good faith, and for value, and entitled to all the rights of an indorsee of negotiable paper, under the law merchant.

*Held also*, that under the circumstances the plaintiff might fairly assume that the check was created and indorsed with a view to its being put in circulation.

*Held, further*, that by making the check payable at a future day, both the maker and the indorsers intended that the holder might either put it in circulation, or return to his place of residence and retain it in his possession until the time of its maturity.

And the holder having returned home, taking the check with him; and it appearing that no more time had been spent in presenting the check than would have been required for the passage of a letter from his residence to the place of payment; it was *held* that reasonable diligence had been used by the plaintiff, to charge the indorsers.

APPEAL from a judgment entered at a special term. The action was brought by the plaintiff as indorsee, against the defendants as indorsers, of the following check:

"New York, May 24, 1857.

Bowery Bank pay to P. Morris, Esq're, or order, five hundred dollars.

$500.                (Signed)        JOSEPH S. TAYLOR.

Indorsed—Pay R. GRAVES, Treasurer.

PETER MORRIS.

Pay SAM'L CONKLIN.

R. GRAVES, Treasurer.

SAMUEL CONKLIN,

Bradford.

A. C. KING."

The Middletown Bank *v.* Morris.

The defendant Morris, by his answer, alleged that Taylor, the drawer of the check, (being then confined to his residence in said city of New York, of a sickness whereof he afterwards died,) sent the said check to this defendant to be by him delivered to the defendant Samuel Conklin. And that this defendant did thereupon, at the said city of New York, indorse and deliver the same to said Conklin, but the defendant alleged that such indorsement by him was for the sole purpose of making the said check negotiable, and not otherwise, and that he never received any consideration whatever therefor. And he further alleged, upon information and belief, that the plaintiff received the said check long after the same became due and payable, and long after the time when it should have been presented to the drawee thereof for payment, and that the said plaintiff was not a *bona fide* holder of said check for a valuable consideration in the usual course of business. And the defendant denied that the said check was duly delivered to the plaintiff, for value received. The defendant denied that the said check was duly presented for payment, or that payment thereof was duly demanded at the Bowery Bank, or that due notice of such demand and refusal was given to him. And he alleged, that had said check been duly presented for payment to the drawee thereof, the same would have been paid.

The defendant Graves, in his answer, alleged that when he indorsed said check, he was treasurer of the McLean County Coal Company, and that he indorsed the same as such treasurer, and not otherwise, and for the sole purpose of making the same negotiable, and without receiving any consideration therefor; and that the plaintiff received the said check long after the same became due and payable, and long after the time when it should have been presented to the drawee thereof for payment, and he denied that the said check was duly delivered to the plaintiff for value received. He denied the other allegations in the complaint, and averred that had said check been duly presented for payment to the drawee thereof, the same would have been paid.

The facts appearing on the trial are stated in the opinion of the court. The plaintiff had judgment, for the amount of the check, with interest; and the defendants appealed.

*J. G. Wilkin,* for the plaintiff.

*J. M. Van Cott,* for the defendants.

*By the Court,* BROWN, J. The Middletown Bank is a moneyed corporation transacting its business at Middletown in the county of Orange, 73 miles distant from the city of New York. On the 28th of May, 1857, it received the check which is the subject in controversy, in the usual course of business, and advanced the money upon it without any notice or knowledge of the circumstances under which it was given. Its officers saw by an inspection of the paper that its date was the 24th of May, 1857, which was Sunday. That it was therefore due and payable on Monday, the 25th of May. That it was drawn upon the Bowery Bank in the city of New York, payable to the order of the defendant Peter Morris, and that it was indorsed by him and also by the defendant Roswell Graves. The officers of the bank were also made aware that it was held by Samuel Conklin, claiming to be the owner, who resided in the state of Pennsylvania. The bank is therefore to be deemed a holder in good faith and for value, and entitled to all the rights which the law merchant assures to the indorser of negotiable paper. Finding the check payable to order, with two names upon it as indorsers, in the hands of a resident of another state, 73 miles distant from the place of business of the drawer, and three days only after it was due and presentable for payment, the bank might fairly assume that it was created and indorsed with a view to its being put in circulation. Why it was made payable to the order of the payee; why the payee and another person put their names upon it as indorsers and passed it away to a resident of another state, if it was not designed for circulation, it would be difficult to say.

If we look at the facts which attended the issuing of the check, and which were unknown to the bank, we shall see that it was not designed by the maker and the two indorsers for immediate presentation and payment. Taylor the drawer, and Morris & Graves, the indorsers, were jointly concerned in the purchase of certain coal lands in McKean county, Pennsylvania, from Samuel Conklin, the person who passed the check to the bank. On the 14th of May, 1857, it was drawn, indorsed and delivered by Graves to Conklin, at the office of Graves in the city of New York, in payment of Taylor's share of the coal lands. This was eleven days before it was payable and in a condition for presentation. Had it been dated on the day it was delivered over to Conklin, the contract of the indorsers would doubtless have been to pay the check upon condition that it should be presented to the drawee on the ensuing day, payment refused and the requisite notice of non-payment given to them. It would, in that case, have made no difference that Conklin was a resident of Pennsylvania, because the check being payable presently and delivered to him in the city of New York, the residence or place of business of the drawer, there would have been a want of reasonable diligence had he omitted to present it, either on the day he received it or on the day thereafter. The question is one of diligence, exclusively, and we are to determine from all the circumstances what were the obligations of the holders of the check, in order to bring themselves within the rule of reasonable diligence.

The contract of the indorsers is to pay, in default of the drawee, upon condition that the paper is presented within a reasonable time after it becomes payable and due notice of non-payment. This reasonable time depends upon no fixed inflexible rule, but upon the circumstances of each particular case. " If a check on a banker be delivered to a person at a place distant from the place where it is made payable, it will be sufficient to forward it by the post, or otherwise, to some person residing at the latter place, on the day after it is received; and it will be sufficient for him to present it on the third day. And it has

been held that a London banker who receives a check by the general post, is not bound to present it for payment until the following day." *Chitty on Bills,* 10*th ed.* 376, citing *Ruckford* v. *Ridge,* (2 *Camp.* 537,) where Lord Ellenborough says, "The rule to be adopted must be a rule of convenience ; and it seems to me to be convenient and reasonable that checks received in the course of one day should be presented the next. Is this practice consistent with the law merchant? It cannot alter it. Banks would be kept in continual fever if they were obliged to send out a check the moment it was paid in. The arrangements mentioned by the plaintiff's witnesses appear subservient to general convenience and not contrary to the law merchant, which merely requires checks to be presented with reasonable diligence." The check in dispute was delivered over to Conklin, in payment for his land, after it was indorsed by the defendants, and eleven days before it was payable. It was in fact payable on time. What was Conklin to do with it in the mean time? He resided in Pennsylvania. Was it reasonable and convenient that he should remain in New York waiting for the check to mature, that he might present it on the exact day? Or was he to employ an agent to take charge of and present it at the proper time? Was that his contract with the persons from whom he received it? Or was it not, rather, to be implied from the nature of the transaction that he was to put the check in circulation as other paper payable on time? Or otherwise, that he was to take it home with him to his own place of residence, and there at its maturity transmitting it in the usual way for presentation and payment? The latter disposition of it was, I think, more reasonable and just than any other, because, by making it payable in the future, both the maker and the indorsers intended the person to whom they paid it might either put it in circulation or return to the place of his residence and retain it in his possession until the time of its maturity. This is what Conklin did. He returned to his place of residence, taking the check with him. It appeared by the proof that letters

were from three to five days, by the regular course of the mail, in passing from his residence to the city of New York. The check was discounted by the plaintiff on the 28th of May, and transmitted to the North River Bank in New York by the first mail thereafter. The North River Bank received it on the 29th, presented it to the drawer for payment on the 30th, at which time the drawer's funds had disappeared and payment was refused, and due notice thereof given to the defendants. It was just five days from the time it became payable until it was presented. In the case of the *Mohawk Bank* v. *Broderick*, (13 *Wend.* 133,) the holder of a check failed to recover of the indorsers, because twenty days were suffered to elapse between the date—it being payable presently—and the time of its presentation for payment, there being a daily mail between the place of business of the holder and that of the drawer. In *Gough* v. *Staats*, (13 *Wend.* 549,) the parties to the check resided in the same place, and the indorser was held to be discharged because the holder allowed six days to elapse after the check might have been presented, and before presentation. *Smith* v. *James*, (20 *Wend.* 192,) was an action to recover from the indorser the amount of two checks drawn upon the Commercial Bank of Buffalo; one dated July 17th, 1836, made payable to the order of and indorsed by the defendant, who resided in New York. It was indorsed over to the plaintiff in the latter city by Wood & Bogert on the 27th July, who on the same day indorsed it over to F. H. Popoon. It was presented to the bank and protested on the 4th of August thereafter. The facts in regard to the other check were the same, except that it was dated on the 28th, negotiated to the plaintiff on the 29th of July, and by him indorsed over to F. H. Popoon on the same day, who presented it for payment and had it protested on the 9th of August. The material feature in the case is, that the checks were put in circulation. The court say, " The plaintiff would have been chargeable with want of due diligence if he had not put the check in circulation. Three days were necessary for the trans-

mission of the check from New York to Buffalo, and it could not have been in circulation more than four or five days before it was presented to the bank for payment. There is no authority for imputing laches on such a state of facts, and the judge was right in overruling the objection." The court refer to the cases of *Robinson* v. *Ames*, (20 *John* 146 ;) *Gowan* v. *Jackson*, (*Id.* 176 ;) *Aymar* v. *Beers*, (7 *Cowen*, 705.)

In the present case Taylor drew and post-dated the check, payable to the order of Morris. He indorsed it over to Graves, who in turn indorsed it over to Conklin, who passed it to the plaintiff. It was created and indorsed with a view to its being put in circulation, and to this end the defendants contributed. Even if Conklin had himself transmitted the check from the place of his residence by the regular course of the mail as soon as it became payable, it is by no means certain that it could have been presented for payment in the regular course of business any sooner than it was.

The judgment should be affirmed.

[Kings General Term, December 14, 1858. *S. B. Strong*, *Emott* and *Brown*, Justices.]