L. SHUSTER SMITH and others *v.* ABRAHAM D. A. MILLER, impleaded with JOHN GREINER and others.

Where the payee of a draft, on the day of its receipt by him, and in banking hours, presents and surrenders it to the drawee and receives therefor the drawee's check, which check, had it been presented to the bank on that day, would have been paid, and on the next day the check is presented to the bank for payment and payment refused, and the drawers of the draft at once advised by letter of the non-payment of the check.— *Held*, that the check could be operative as payment only by express agreement; but that although, as between the said drawee and payee, the payee was not bound to present the check until the day after its receipt

by him, yet that between the drawers and payee of the draft, it was the duty of the payee to present the check at once, and he was guilty of laches in not so doing, and was chargeable with the consequent loss.

Accordingly, where upon a sale of a bill of goods to the defendants, the plaintiff received from them for the price a draft, which the plaintiff presented to the drawee, and took his check and gave up the draft, a delay of one day to present the check, during which time the drawee failed, was laches, and precluded the plaintiff from recovering the price of his goods from the defendants.

(Argued December 1, 1870; decided December 13, 1870.)

Appeal from a judgment of the General Term of the Superior Court of the city of New York, affirming a judgment for the plaintiff at the circuit.

This action was brought to recover the unpaid balance of the price of a bill of goods sold by the plaintiffs to the defendants.

The defendants set up a defence of payment by a draft for $2,968.69, drawn by them on James K. Place & Co., of New York, to the order of the plaintiffs.

The draft was received by the plaintiffs by mail on the morning of November 19th and was immediately indorsed by the plaintiffs, and at about half-past one in the afternoon of the same day was presented for payment at the counting house of James K. Place & Co., the drawees, who were merchants in New York of good standing. In payment of the draft James K. Place & Co. gave their check on the Manufacturers' National Bank to the order of the plaintiffs for the full amount.

At the time the check was received by the plaintiffs, James K. Place & Co. had funds in that bank to meet the check, which would have been paid, had it been presented on that day.

The check was deposited on the same afternoon in the Citizens' Bank for collection, and was not presented for payment at the Manufacturers' Bank till twelve o'clock the next day, on the morning of which day James K. Place & Co. had failed, and on that account payment of the check was refused.

Judgment was ordered for the plaintiffs at the circuit, and an appeal was taken therefrom to the General Term, where it was affirmed, and from the judgment of affirmance entered at the General Term this appeal was taken.

*Joseph H. Choate*, for the appellant, that the failure to present the check for payment on the day of its receipt released the defendant from all liability on the draft, cited *Kobbe* v. *Clark and others* (Selden's Notes of Cases, N. 4, p. 11, October 17, 1853); 2 Parsons on Bills and Notes, 367; *Ontario Bank* v. *Lightbody* (13 Wend., 101).

*Elbridge T. Gerry*, for the respondent, that the receipt of the check was not payment of the draft, cited *People* v. *Howell* (4 Johns. R., 303); *Olcott* v. *Rathbone* (5 Wend., 491); *Genin* v. *Tompkins* (12 Barb., 265); *Strong* v. *Stevens* (4 Duer, 668); *Highland Bank* v. *Dubois* (5 Denio, 558); *Bickford* v. *Maxwell* (6 Term R., 52); *Watervliet Bank* v. *White* (1 Denio, 608); *Ontario Bank* v. *Lightbody* (13 Wend., 101); *Markle* v. *Hatfield* (2 Johns. R., 455); *Thomas* v. *Todd* (6 Hill, 340); *Hawkins* v. *Starke* (19 Johns., 304, etc.)

Allen, J. The bill of the defendants on J. K. Place & Co., was not received by the plaintiffs in absolute payment of their claim, and the debt due from the defendants was not discharged by the delivery of the draft. It was received in payment *sub modo*, and could become operative as a payment in fact only when paid by the drawees. (*Hall* v. *Barber*, 13 N. Y., 566; *Bradford* v. *Fox*, 38 id., 289; Story on Bills, § 419.)

The check of J. K. Place & Co., the drawees of the bill to the order of the plaintiffs, in the absence of an express agreement that the same should be received as payment, was not a payment of the bill; and as the check was dishonored when presented for payment, there has been no actual satisfaction of the debt due the plaintiffs from the defendants. It was the duty of the plaintiffs, however, if they intended to hold the

defendants either as drawers of the bill, or for their prior indebtedness, to present the bill for payment within the time prescribed by law for that purpose, and if not paid, to notify the defendants of its dishonor. Had that been done, the remedy of the plaintiffs against the defendants would have been very clear. They would have been remitted to all their rights for the recovery of their original claim as if no bill had been drawn. It was under such circumstances that the plaintiff was held entitled to recover in *Turner* v. *Bank of Fox Lake* (3 Keyes, 425). That action was upon a bill of exchange given to take up a like bill before then drawn and duly presented and protested for non-payment. In that case as in this, the check of the drawee of the first bill had been received, but on payment being refused by the bank, it had been returned and the bill reclaimed and properly protested for non-payment, and notice given to the drawer, and all in due time from the receipt of the bill by the plaintiffs. The bill sued upon was adjudged to have been given upon a sufficient consideration.

Although the plaintiffs may not have realized the money upon the bill or their check, and their debt remains unpaid, it does not follow that the defendants continue liable.

A creditor may so deal with negotiable securities received from his debtor for collection, and to be placed to his credit when paid, as to discharge the debtor from all liability whether the securities are in fact paid or not. He may make them his own so as to substitute the parties to the securities his debtors, in place of his original debtor, by his dealings with those parties; as by giving time for payment, or by any other act prejudicial to the interests of the debtor. (*Southwick* v. *Sax*, 9 W. R., 22; *Vernon* v. *Brown*, 2 Shaw, 296.) The same result will follow any neglect or laches of the creditor in obtaining payment of negotiable instruments transferred from which loss and injury ensues.

By receiving the securities, and assuming the collection, or as here, receiving the bill, and consenting to present the same for payment, he undertakes to do all that the law

requires to be done, to obtain payment, and if he fails in the performance of that duty the debtor is discharged. (*Canndye* v. *Allenby*, 6 B. &. C., 373; Story on Bills, § 109.) Laches, which would discharge the drawer or indorser of a bill of exchange, will as effectually extinguish the debt, for payment of which a bill or other negotiable instrument is transferred. (Story on Bills, *supra*, and note; id., § 419 and note.) This was decided in *Kobbe* v. *Clark* (Selden's Notes, October, 1853, p. 11). If by the acts or omission of the creditor, thus receiving negotiable instruments for collection, a loss occurs, it should fall upon him, who is the cause of the loss, rather than upon the distant and innocent debtor. (*Bradford* v. *Fox*, *supra*.) The defendants residing at Buffalo, being indebted to the plaintiffs doing business in New York, and having funds with J. K. Place & Co., in the latter city, drew their bill on the latter firm to the order of the plaintiffs to be presented for payment, and when paid to be applied in payment of the indebtedness. The plaintiffs, instead of insisting upon the money, received the check of Place & Co. upon one of the banks in the same city. There was no impropriety in the receipt of the check, and as the drawees were entitled to the draft upon payment of it, there is nothing in the case upon which fault could be imputed to the plaintiffs in the surrender of the draft on receipt of the check. (*Russell* v. *Hawkey*, 6 T. R., 12; *Howard* v. *Robinson*, 7 B. & C., 90; Byles on Bills, 16; Story on Bills, § 419; Chitty on Bills, 433, 434, ed. of 1833.) If the check was worthless when given, or became worthless, before it could have been with reasonable diligence presented for payment, the loss would have fallen upon the defendants, and they would not have been discharged from their liability, unless the plaintiffs had omitted to notify them in due time of the non-payment of the bill. There would, in such case, be no loss resulting from negligence.

But a check is payable instantly; and as between the drawer and drawee, the latter has, in analogy to the rules applicable to inland bills of exchange, until the day after the

receipt of a check to present it for payment, when drawn on a bank in the same place where given and received. (*Smith v. James*, 20 W. R., 192; *Harker* v. *Anderson*, 21 id., 372; *Ward* v. *Evans*, 2 Ld. Ray, 928.) But the duty of the plaintiffs to the defendants is not determined by that rule of commercial law. That rule has respect only to the contract, and liability of the parties to the instrument.

When a check is taken instead of money, by one acting for others, as was done by the plaintiffs, a delay of presentment for a day, or for any time beyond that within which with proper and reasonable diligence it can be presented, is at the peril of the party thus retaining the check and postponing presentment, as between him and the persons in interest, whom he represents. If a custom can exist in law, and does exist in fact, authorizing such delay at the risk of the absent principal, it must be shown; it cannot be presumed to exist without evidence.

The undisputed evidence in this case, shows a practice, if not inconsistent with the existence of any such custom, at least more in harmony with the relative rights and obligations of the parties as recognized by law; and which, had it been adopted by the plaintiffs, would have prevented all loss. The proof is that the account of the drawers of the check was good at the bank during all the business hours of the day on which it was drawn; that the amount to their credit, and subject to their draft, was more than sufficient to pay all outstanding checks; and if this check had been presented, it would have been paid or certified as good, which would have been equivalent to payment. The plaintiffs had two full hours for presenting the check.

Two checks, drawn later in the day one for $11,000, and one for $9,500 were presented at the bank and certified before three o'clock of that day and subsequently paid. The same diligence by the plaintiffs, as was exercised by the holders of those checks, would have obtained the money. This practice of " certifying checks " by the banks, is equivalent to an acceptance binding the banks to payment,

and is recognized and sanctioned by the law. The certificate is regarded as an acceptance in writing within the statute. (1 R. S., 722; Byles on Bills, 15; *Mead* v. *Mechanics' Bank of Albany*, 25 N. Y. R., 143.) It was the duty of the plaintiffs to present the check at the bank, at least during the day on which they received it, and obtain either the money or a certificate or cause the same to be protested for non-payment; and not having done so, they were chargeable with negligence and the consequent loss. By their delay and neglect unless some evidence in explanation or excuse can be given, they made the check their own and the defendants were discharged.

The judgment should be reversed, and a new trial granted, costs to abide the event.

All the judges concurring for reversal, judgment reversed and new trial granted.