Huston v. Weber.

---

HUSTON, appellant, v. WEBER *et al.*

*Payment by draft on third person — Bill of exchange — failure to give notice of non-payment — Agency.*

Plaintiff, the owner of a draft, transferred it to S. in payment of a debt. S. placed it in the hands of defendants with directions to collect and distribute the proceeds in payment of claims against him. The agents of defendants presented the draft to the acceptor, who did not pay it, and no notice being given to the drawer, who was solvent, he was released. *Held,* that S. having accepted the draft as payment of the debt due him was bound to use ordinary diligence in presenting the same for payment, and notifying the drawer if payment was refused ; that upon a neglect to do so the debt was discharged, and plaintiff had no interest in the draft, and that defendants were the agents of S. in the transaction and were responsible to him and not to plaintiff for the damage caused by the neglect to give notice of the non-payment of the draft.

APPEAL from a judgment in favor of defendants in a trial had before Mr. Justice BRADY without a jury. The action is against the defendants, John Weber and others, for damages sustained by plaintiff, Robert Huston, from their negligence in not giving notice to the drawer of a certain draft sent to them for collection, of the non-payment thereof by the acceptor, by which negligence the drawer was released from his liability upon said draft. The facts appear sufficiently in the opinion.

*Simon Sterne,* for appellant.

*R. W. Townsend & A. R. Dyett,* for respondents.

DANIELS, J. The plaintiff brought this action to recover the amount due upon a draft delivered to the defendants, who were

copartners doing business in the city of Chicago at the time. For the purpose of having the same collected, they forwarded the draft to their correspondents in New York, who presented it for payment to the acceptor, but it was not paid, and they failed to give notice of such non-payment to the defendants, or any party to the draft, until after the drawer, who was solvent and responsible, had been discharged from liability by reason of such default. The draft was not, in fact, delivered to the defendants by the plaintiff, but by Samuel Huston. They received it from him inclosed in a letter written in his own name, and containing no allusion to the plaintiff, or any other person besides himself, as interested in it. By this letter he directed them to distribute its proceeds by paying a debt to themselves, and paying another firm an amount mentioned in the letter, and the interest on a balance to still another person. This distribution of the proceeds, if the direction had been followed, would have inured to the benefit of Samuel Huston in the payment of his own debts. There was nothing in the transaction which could have led the defendants to conclude that any other person than he was in any way interested in the draft, and they had no information from any source to the contrary, until after the failure of their correspondents to charge any parties on the draft, by notice of its dishonor.

It, however, appeared, during the progress of the trial, that the plaintiff purchased and owned the draft before it passed into the hands of Samuel Huston, to whom he was indebted; that Samuel Huston wanted a draft on New York, and the plaintiff sent him this one, supposing it would answer. Upon the cross-examination of the plaintiff, as a witness, he testified that he, as administrator of his father's estate, owed his brother money, and sent him the draft to collect it, to pay him, and also to remit to the plaintiff's sister and another brother. He added further that Samuel was to collect and distribute the whole amount of the draft. This was substantially the view which the learned judge at the trial adopted in his decision, for he found as a fact that the draft was sent by the plaintiff to his brother, with instructions to collect the same, and with permission to apply the proceeds to his own use if he desired to do so. What the amount was which Samuel Huston was to pay to the plaintiff's sister and brother out of the proceeds of the draft was not made to appear, but from the statement of the plaintiff that he owed his brother Samuel, who wanted a draft on New York, and he sent him

this for collection, which he supposed would answer, it is evident that it was intended that Samuel was to have a beneficial interest in the proceeds, and that he accordingly had the right to so use the draft as to render that interest available in any proper way that he saw fit. By his letter to the defendants accompanying the draft he appears to have availed himself of that understanding, because he directed the defendants to apply the proceeds to the payment of debts which seem to have been owed by him. It was a means in his hands by which he could receive the debt owing to him from the plaintiff as administrator, and he negotiated and delivered it to the defendants, expecting to accomplish that result by the transaction between them.

This produced at least a suspension of his right to proceed against the plaintiff for the amount owing by him as administrator, and that suspension continued so long as the draft was out of his hands by means of the transfer made of it to the defendants, and by the default of the defendants' correspondents in failing to charge the drawer, it has ever since continued. In fact, the legal consequence of the failure has been to extinguish his claim against the plaintiff altogether, for after receiving the draft as a means of procuring the payment of the debt owing to him, his right to resort to the administrator again upon the same debt depended upon the return of the draft, after its dishonor, with the drawer properly charged by notice of its non-payment. Where a debtor transfers a negotiable security to his creditor, before its maturity, as a means through which payment of the debt is to be secured, and by the creditor's laches the only responsible parties contingently liable upon it are discharged, the creditor makes the security his own, and the debt to that extent at least is satisfied. *Tobey* v. *Barber*, 5 Johns. 68, 72; *Jones* v. *Savage*, 6 Wend. 659; *Smith* v. *Miller*, 43 N. Y. 171, 174, 175; *Dayton* v. *Trull*, 23 Wend. 345. In his opinion in this case, BRONSON, J., says: "That whether received as payment, or on an agreement to apply the money when collected, the duty of presenting the bill results from the nature of the security. It purports to be a transfer of funds which the drawer has in the hands of the drawee, and there is an implied undertaking on the part of the holder that he will take the proper steps to have those funds applied to the satisfaction of his debt." Id. 346, 347.

If Samuel Huston had brought an action against the plaintiff as administrator for the recovery of the amount of the debt for which

the draft was delivered to him, the omission to charge the drawer would clearly have constituted a defense. A return of the draft, with the responsible drawer discharged while it was in the hands of the parties to whom he transferred it, or in those of their correspondents, would not have revived his remedy for the collection of the debt. Their laches put it out of his power to insist upon such a return; consequently he, and he alone, was interested in the action of the defendants on the draft. They received it from him to be collected and the proceeds applied for his benefit (and, as between himself and the plaintiff, he had the right to make that disposition of it); this rendered the defendants his agents, and they became responsible alone to him for the proper discharge of their duties in that capacity — as between them he was the person to be, and who was injured by their laches, and for its consequences they are liable to him and not to the plaintiff, with whom they have neither directly nor indirectly had any transaction concerning the draft.

It was claimed on the argument that a recovery might be had by the plaintiff as the assignee of Samuel Huston; but this position cannot be sustained, because he has not sued in that capacity. The theory of the complaint is that he intrusted the defendants with the collection of the draft, and that their liability was incurred by a failure to perform their obligations to him. Under such a statement of the case no good reason could exist for maintaining the action in his favor, because he might have presented a case justifying a recovery as assignee. To sustain such a claim it must first be set forth in the complaint, so that the defendants may be afforded an opportunity of meeting it upon the trial. Nothing was alleged from which the defendants could suspect that such a claim was intended to be presented against them, and no such position appears to have ever been taken upon the trial.

The judgment should be affirmed.

DAVIS, P. J., and DONOHUE, J., concurred.

*Judgment affirmed.*