## THE FIRST NATIONAL BANK OF MEADVILLE, PENN-SYLVANIA, RESPONDENT, *v.* THE FOURTH NATIONAL BANK OF THE CITY OF NEW YORK, APPELLANT.

*Duty of collecting agent — check taken in payment of draft, must be presented on the same day.*

Where a draft sent to a bank for collection is presented by it, and the drawee's check taken in payment thereof and the draft surrendered, it is the duty of the bank to present such check for payment on the same day, if it can be so

presented by the exercise of reasonable diligence; and if the check would have been paid, if presented on that day, but is not good on the next, through the failure of the maker, the drawers of the draft are discharged and the bank is liable to its depositor for its failure to collect it.

*Smith* v. *Miller* (43 N. Y., 171), and *S. C.* (52 id., 545), criticised and followed.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The referee found, among other things, that the Crawford County National Bank, being indebted to the plaintiffs, made its draft upon Culver, Penn & Co., who were bankers and brokers in New York, to the order of the plaintiffs for $6,000, dated March 22, 1866, payable at sight, and delivered it to the plaintiffs. The plaintiffs indorsed the draft to the defendants, the collecting agents of the plaintiffs, and sent it by mail to the defendants to be collected and credited to their account. The draft came to the hands of the defendants on the morning of Monday, March 26, 1866. The defendant presented the draft for payment to the drawees, Culver, Penn & Co., on the morning of March twenty-six, and received for it a check of Culver, Penn & Co., dated that day, for $6,000, upon the Third National Bank of New York, the bank where Culver, Penn & Co. kept their account. No uniform custom in regard to accepting checks upon banks in payment from the payees of sight drafts, sent to the banks as agents for collection, was proved to exist in the city of New York. The practice varies with the credit of the drawees, the condition of the money market and other circumstances, and among different banks. Culver, Penn & Co. were embarrassed in conducting their business and meeting their payments on the twenty-sixth of March. They paid small drafts upon them in cash, and gave checks for those of larger amount presented during that day. They had on hand on the twenty-sixth of March, for the purpose of transacting their business over their counter, about $19,000 in cash. Their obligations, maturing on the twenty-sixth, were largely in excess of this amount. Their account in the Third National Bank was overdrawn. The Third National Bank paid or certified all checks of Culver, Penn & Co. drawn upon it, which were presented to it during Monday, March twenty-six. The account of Culver, Penn & Co. with the bank was overdrawn when the check given to the defendants was drawn.

The Third National Bank, for at least a month previous to March 25, 1866, had been in the practice of paying or certifying, upon presentation, checks of Culver, Penn & Co. beyond the amount at their credit. When it was found, in making up their account on the morning of any day, that the checks of the previous day had thus exceeded their cash balance, Culver, Penn & Co. deposited collateral securities to the amount of such overdrafts. The amount to which this should be permitted, and its continuance, was constantly at the discretion of the Third National Bank. On the twenty-seventh of March the Third National Bank refused any longer to pay checks of Culver, Penn & Co. The check on the Third National Bank, given by Culver, Penn & Co. to the defendants, on March twenty-sixth, was not presented on that day to the Third National Bank for payment or certification. It was sent in through the clearing house of the New York banks with the exchanges between the defendants and the Third National Bank, and was thus presented to the Third National Bank on the twenty-seventh of March. Payment of the check was then refused by the Third National Bank. The defendants then returned the check to Culver, Penn & Co., and received back from them the draft for $6,000, drawn upon them by the Crawford County National Bank. That draft was then again presented for payment to Culver, Penn & Co. by the defendants. It was not paid and was protested, and notice of its non-payment duly given to the Crawford County National Bank and to all the parties to the draft.

The referee further found that on March 26, 1866, the Crawford County National Bank had on deposit, to its credit with Culver, Penn & Co., money exceeding $6,000 in amount to meet its drafts, and directed judgment for plaintiffs.

*H. B. Bristow* and *W. Peet*, for the appellant.

*George A. Black*, for the respondent.

DAVIS, P. J.:

If an action had been brought by the present plaintiff against the Crawford County Bank, the drawer of the draft described in the complaint in this action, upon that instrument, it would be impossible to distinguish the case from that of *Burkhalter* v. *The*

*Second National Bank of Erie* (42 N. Y., 538), and the law as declared by the Court of Appeals in that case, and in *Turner* v. *Bank of Fox Lake* (4 Abb. Ct. App. Dec., 434; id., 3 Keyes, 425), would entitle the plaintiff to recover, unless overruled by the court which pronounced it. But the learned referee in this case has felt himself bound by the decision of the Court of Appeals in *Smith* v. *Miller* (43 N. Y., 171; 52 id., 545.) The defendant, The Fourth National Bank, was the collecting agent of the plaintiff, and as such received the draft drawn by the Crawford County Bank for collection. Its duty was to collect the draft, or, on failure to make collection, to take such steps in respect of it as would charge the drawer, or enable the plaintiff to charge the drawer. On presenting the draft to the drawees for payment the defendant received the check of the drawees on the Third National Bank, and delivered up the draft. According to the law of *Smith* v. *Miller* (*ubi supra*), it was the duty of the defendants to have presented that check for payment or certification, during the business hours of the day on which it was made. In *Smith* v. *Miller* the plaintiffs had about two hours of the day on which the check was drawn in which they might have presented it; and it was held that their neglect to do so discharged the drawers of the draft for which the check was given. Precisely the same course in relation to the check was taken in that case as in this ; that is, the check was sent in for collection on the following day through the clearing house, and it was held that the drawer of the draft was discharged by the negligence of the plaintiff in not presenting the check on the day before, the bank having failed on the following morning. The rule given by this case is an extremely dangerous and variable one ; for if a delay of two hours in presenting the check on the day of its date be negligence, it is obvious that one of a single hour, or even of a much less period, where circumstances permit an immediate presentation, will have the same effect. There is no safety in such cases for a collecting agent or his principal, except in the use of the utmost diligence ; because, where five minutes after its delivery is abundant time in which to present a check under such circumstances, and would have secured payment, it must follow that fifteen minutes is too great a delay. Established commercial usages, and even the settled rules of law

relative to commercial paper, are impotent to regulate this class of business, as the question of reasonable diligence in each case becomes one of fact, quite independent of such usages and rules.    There is nothing so essential to the safety and convenience of commercial business as fixed and well-understood rules, definitely prescribing the time within which commercial paper must be presented, demanded, accepted or protested and notice given, etc.; and whatever tends to render such rules uncertain, and dependent upon the accidents of particular circumstances, is bad in policy and ought to be bad in law.    We feel ourselves, however, like the learned referee, constrained to follow the decision in *Smith* v. *Miller*, and that leaves but a single question in this case, which is, whether it is sufficiently found or shown that the check of the drawees, if presented on the day of its date, would have been paid by the Third National Bank ?    It appears that the check was not " good," within the legal signification of that term.    Its makers were largely overdrawn at the bank, and had no funds there out of which the bank was legally bound to have paid the check; but it was shown, and was so found by the learned referee, that an arrangement existed between the bank and the makers of the check, under which, at that time and for more than a month previously, the bank had paid the overdrafts of the makers, and that the bank did pay or certify all other checks presented on the day of the date of this check, and did not refuse to pay any of their checks until the following day.    The referee has not distinctly found that the check would have been paid, if presented on the day of its date; but the fair presumption, from the facts found by him, is that such payment would have been made.    The defendant acted in good faith, and in accordance with the ordinary course of transacting business of this character ; but in the conflict of decisions in this State, it is our duty to follow the later case of *Smith* v. *Miller*, which leads, we think, to an affirmance of the judgment.

The judgment should be affirmed.

Brady and Ingalls, JJ., concurred.

Judgment affirmed.