Betterton *v.* Roope.

3L 215
12L 680

## BETTERTON *v.* ROOPE.

DEBTOR. *Creditor. His duties in reference to collaterals. Negligence. Case:*
R. was indebted by account to B., not having the money to pay he endorsed to B. a draft on C., due in thirty days, the proceeds to be credited on his account. The draft was not presented at maturity, and shortly thereafter C. became insolvent. Held, that B. cannot maintain suit against R., either on the original debt or the draft. There was such negligence on the part of the creditor as injured and

released the debtor. He cannot impose upon the debtor the loss which was occasioned by his own neglect while controlling or having the right to control the draft.

### FROM HAMILTON.

Appeal in error from the Circuit Court of Hamilton county. D. C. TREWHITT, J.

E. M. DODSON for Betterton.

LEWIS SHEPHERD for Roope.

FREEMAN, J., delivered the opinion of the court.

Betterton sued defendant by summons before a justice of the peace for Hamilton county in a plea of debt due by account. The case went by appeal to the circuit court, where it was tried by the court, a jury being waived, and judgment rendered for plaintiff for the amount of his account.

The facts necessary to be stated are, that on the 9th of June, 1877, the defendant was indebted to plaintiff by the amount of the account sued for in this case. When called on for the money he stated he did not have it, but endorsed and handed plaintiff a draft, drawn by the agent of the company, on Bartow iron company, payable at Rome, Ga., thirty days after the above date. He said to plaintiff at the time, you can use the draft. At the same time a receipt was executed as follows:

"Received of James Roope a draft on Bartow iron company for one hundred and twenty dollars, payable

thirty days from date, dated June 9, 1877, to be credited on his draft (account) when collected."

Plaintiff endorsed the draft to the Discount and Deposit Bank of Chattanooga, and got the money on it. A few days after the draft fell due, it not having been paid, plaintiff paid it to the bank and took it up.

The Bartow iron company was solvent both in Georgia and at Chattanooga when the draft was drawn, and when it fell due, and was paying its paper promptly, until the 15th or 16th of July, three days after the maturity of this draft. The company had kept an agent at Rome authorized to accept drafts and pay them, until a few days before this draft was due, but had removed the agency to Chattanooga, where all accepted drafts were paid up to the day of suspension above stated. From the facts shown in proof it is clear, if the draft had been presented when due, it would have been paid.

It further appears that in August, 1877, plaintiff sued defendant Roope, the Bartow Iron Co., and Bank of Discount and Deposit, on this draft, before L. B. Headrick, a justice of the peace, who, after hearing, entered a regular decree as his judgment in the case, with the reasons for his conclusions. We need not examine the correctness of this judgment, suffice it to say he gave judgment in favor of Roope and the company, and against the bank, and was careful to add "that this was without prejudice to the rights of the plaintiff or any one else to sue over again either on the paper or for any cause of action, and in any

form." The bank has appealed, but what has been the result of the case we do not know. As it is claimed this is an adjudication of the rights of the parties, and conclusive of the present case, we need but say that this cannot be so held. That was a suit on the draft against defendant as endorser, a judgment in his favor in that case was not an adjudication of the questions involved in this case, which are his liability on the facts for the original indebtedness due by account, and his rights on the facts we have stated, arising out of the failure of the holder of the paper to present it for acceptance or payment.

It is clear from the testimony, and especially the contract of the parties in the concluding part of the receipt, that the draft was not taken as a payment of the account. The amount was to be credited on the account when collected, not having been collected it cannot be claimed the credit shall be given by the language and letter of the contract. Is he entitled to get the benefit of this draft by way of recompment or otherwise because of failure to present for payment as a matter of law growing out of the contract of the parties?

There was no need of acceptance or presentment for such acceptance in this case, the bill being drawn by the party or company through its agent or the company. Dan. Neg. Inst. 8, sec. 482. The transfer of the draft was but as collateral to the debt, and the creditor so receiving the paper takes the place of the holder as to his rights on the paper, and assumes.

the duties of such holder. See Dan. Neg. Inst., vol. 1, 2d Ed., sec. 828.

The fair construction of the contract of the parties is, that he will use proper diligence in the collection of the security, and will account for the same, and he is certainly forbidden such negligence as shall produce loss to the debtor who transfers the paper to him. His duties arise out of the transaction. He receives from his debtor a draft or negotiable paper which, by law, is due on a certain day. It is his duty to present the paper for payment on that day, and as he has the endorsement of his debtor on the paper, he ought probably to give him notice of the failure to pay; certainly so, if he seeks to hold him on the paper or his endorsement.

The question of notice to the endorsing debtor in this case is not, however, material. The question is, whether there was a neglect of duty on the part of the creditor receiving the draft, by reason of which the debtor has been injured. That this is true is beyond question. If the creditor had received of his debtor a check and failed to present it, the principle would have been the same precisely. If he had received part or all the money on the draft, and failed to credit it, beyond question such receipt would have been a good defense *protanto*, or in whole, to collection of the debt due by the account; so we think, on sound principle, a failure to receive when he ought to have received, such failure being the result of his own negligence or the party to whom he had endorsed it, should equally work the same result. He fails to ac-

count in either case for the collateral. He has had the benefit of it as a security for his debt, and took it as a means of payment, thus depriving the original holder of the right to control it, and putting himself in his place. He cannot impose upon him the entire loss, when it results from his own neglect while controlling or having the right to control the paper. It may have been the neglect of the bank to which he endorsed it, and received the money in advance on it for his own use. If so, he cannot avoid his own liability, but must look to the bank for his indemnity, if he has any remedy. He cannot inflict the loss on his debtor.

We find authorities sustaining these views. In a recent English case, says Mr. Daniel (Neg. Inst., sec. 828), where the defendant endorsed to the plaintiff a bill, of which he was endorser, as collateral security for a debt of greater amount, then due, the residue ·of which he paid in cash, and the plaintiff failed to make presentment or to give notice, it was held that he had lost recourse upon his endorser, both on the bill and on the original debt. Byles, J., said "That as they had the rights so they had the duties of the holders." See cases cited; *Peacock* v. *Purcell*, 14 C. B., N. S., sec. 728; see also Am. R. L., vol. 3, 440.

So, too, in a late case in New York where the defendants, a firm in Buffalo, being indebted to the plaintiff's firm in New York, forwarded by mail a draft on another business house in New York. The plaintiff, about half past one o'clock on the day of the receipt of the

draft, presented it to the drawers and received a check for the amount. This party had funds in the bank on which the check was drawn, and the check would have been honored if it had been presented that day. The check, however, was deposited by the plaintiff in his own bank, and did not reach the other bank until twelve o'clock the next day, and after the drawer had failed. It was held that the plaintiff was guilty of laches in failing to present the check on the day it was received, and the defendants were released from liability for their indebtedness. *Smith* v. *Miller*, 43 N. Y., 171; 3d vol. Am. R., 690.

This case is put on the grounds that a party receiving securities of this kind may so deal with them as to discharge his debtor, whether they be paid or not, that he may make them his own by such dealing, as by giving time for payment or other act prejudicial to the debtor, and this result will follow any neglect or laches of the creditor in obtaining payment of negotiable instruments transferred, from which loss or injury ensues.

By receiving the securities, says the court, and assuming the collection, he undertakes to do all that the law requires to be done to obtain payment, and if he fails in the performance of that duty the debtor is discharged, citing *Canndye* v. *Allenby*, 6 Barn. & Cresw., 373; Story on Bills, sec. 109. Laches which would discharge the drawer or endorser of a bill will as effectually extinguish the debt for the payment of which a bill or other negotiable security is transferred. Story on Bills, sec. 419, 109 and note. See cases

---

cited in this case. These authorities seem conclusive of the question, and are so consistent with the right of the case, that we feel no hesitancy in adopting them.

The result is, the judgment of the court below is reversed, and a judgment for the defendant will be entered here.