THE FIRST NATIONAL BANK OF MEADVILLE, PENN-
SYLVANIA, Respondent, *v.* THE FOURTH NATIONAL
BANK OF THE CITY OF NEW YORK, Appellant.

*Draft — negligence of agent in collecting it — measure of damages.*

The Crawford County National Bank of Pennsylvania being indebted to the
plaintiff drew a draft upon its correspondents in New York city to the order
of the plaintiff, and delivered it to him. The defendant to whom it was sent
for collection took the drawee's check in payment thereof, but did not present
the check for payment or certification until the next day after receiving it,
when payment thereof was refused, the drawee having failed in the meantime.
Thereafter the draft was duly protested and notice thereof given to the
drawer. The drawer of the draft had at the time moneys in the hands of
the drawee, and the check would have been paid if presented on the day it
was drawn.

Upon the trial of this action, brought by the plaintiff to recover the damages
occasioned by the negligence of the defendant in failing to collect the draft:

*Held,* that if the delivery of the draft to the plaintiff by the drawer was to be
considered as a payment of the indebtedness, the failure of the creditor to col-
lect the same from the drawee, who then had funds of the drawer in his hands,
released the drawer from all liability for the debt.

That if it was delivered to the plaintiff to collect the same, as the agent of the
drawer, then the plaintiff was responsible for the acts of its sub-agent, the
defendant, and was liable to the drawer for the negligence of the defendant in
failing to collect it.

That in either event the plaintiff was entitled to recover as damages the face of
the draft with interest.

Appeal from a judgment in favor of the plaintiff, entered upon
the report of a referee.

On March 22, 1866, the Crawford County National Bank, a cor-
poration located and doing business in the State of Pennsylvania,
being indebted to the plaintiff, a national bank located at Meadville,
in the same State, delivered to it a draft upon Culver, Penn & Co.,
bankers and brokers doing business in the city of New York, for
$6,000, payable at sight. The draft, which was sent to the defend-
ant for collection, was received on the morning of March twenty-
sixth, and on that day presented for payment and surrendered
to the drawees upon receiving their check upon the Third National
Bank for the amount thereof. The check was presented to that
bank, through the clearing-house, on the next day and payment

thereof refused, the drawees having failed in the meantime. If it had been presented on the day it was drawn it would have been paid.

Upon the first trial a judgment was recovered by the plaintiff which was affirmed by the General Term (16 Hun, 332), but reversed by the Court of Appeals. (77 N. Y., 320.)

*B. H. Bristow*, for the appellant.

*G. A. Black*, for the respondent.

DAVIS, P. J.:

The principal questions in this case were disposed of on the appeal to the Court of Appeals from the former judgment. (77 N. Y., 320.) The case was sent back for a new trial solely upon a question of damages, the court holding, upon the facts as they appeared at that time, that the plaintiffs were entitled to nominal damages only.

The only question that we are at liberty therefore to consider, so far as relates to the right to recover, is whether, upon the present trial, sufficient facts have been shown to entitle the plaintiff to the damages which have been adjudged to it by the learned referee.

There seems to us to be no difficulty upon this question on the findings of the referee. It appears by his second finding of fact that the Crawford County National Bank "*being indebted*" to the plaintiff drew its draft upon Culver, Penn & Co., bankers and brokers doing business in the city of New York, to the order of the plaintiff for $6,000 payable at sight, and delivered the same to the plaintiff. The delivery of the draft by the Crawford County National Bank was, according to well settled authorities, a payment *sub modo* of its indebtedness to the plaintiff to the amount of the draft. (*Smith* v. *Miller*, 43 N. Y., 171; *Hill* v. *Beebe*, 13 id., 566; *Bradford* v. *Fox*, 38 id., 289; Story on Bills, 419; *Turner* v. *Bank of Fox Lake*, 3 Keyes, 425; *Burkhalter* v. *National Bank of Erie*, 42 N. Y., 538.) There is no pretense that the drawer had not funds in the hands of the drawees. Nor can there be any question but that the neglect of the defendant, by means of which these funds were lost by the failure of the drawees, is chargeable upon the plaintiff as between it and the drawer.

As was said by ALLEN, J., in *Smith* v. *Miller* (*supra*), "A cred-

itor may so deal with negotiable securities received from his debtor for collection, and to be placed to his credit when paid, as to discharge the debtor from all liability whether the securities are in fact paid or not. He may make them his own so as to substitute the parties to the securities his debtors, in place of his original debtor, by his dealings with those parties, as by giving time for payment or by any other act prejudicial to the interests of the debtor. (*Southwick* v. *Sax*, 9 Wend., 22; *Vernon* v. *Brown*, 2 Shaw, 296.) The same result will follow any neglect or laches of the creditor in obtaining payment of negotiable instruments transferred, from which loss and injury ensues. By receiving the securities and assuming the collection, or, as here, receiving the bill and consenting to present the same for payment, he undertakes to do all that the law requires to be done to obtain payment; and if he fails in the performance of that duty the debtor is discharged. (*Camidge* v. *Allenby*, 6 B. & C., 373; Story on Bills, § 109.) Laches which would discharge the drawer or indorser of a bill of exchange will as effectually extinguish the debt, for payment of which a bill or other negotiable instrument is transferred. (Story on Bills, *supra*, and note; id., § 419, and note.) This was decided in *Kobbe* v. *Clark* (Selden's Notes, October, 1853, p. 165). If by the acts or omission of the creditor thus receiving negotiable instruments for collection a loss occurs, it should fall upon him who is the cause of the loss rather than upon the distant and innocent debtor. (*Bradford* v. *Fox*, *supra*.)

If there had been such a finding of fact when the case was before the Court of Appeals as that now made, to wit, that the Crawford County National Bank *being indebted* to the plaintiff made its draft and delivered the same to the plaintiff, we can conceive of no reason that would have called for a new trial upon the mere question of damages.

No exception was taken by the defendant to this finding, and must assume that it was based upon sufficient evidence given case. As the case now stands it follows that the plaintiff by reason of the neglect of the defendant a loss equal to the amount of the draft and was therefore entitled to a judgment for that amount under the adjudication of the Court of Appeals in this case.

All the other evidence supposed to bear upon the question of the amount of damages becomes quite immaterial when the new element of indebtedness of the Crawford County Bank to the plaintiff, at the time of the making and delivery of the draft, appears.

But we are unable to see why the plaintiff was not entitled to recover the full amount of the draft, in any aspect of the case, under the rulings of the Court of Appeals. If the draft was delivered to the plaintiff by the Crawford County National Bank merely as its agent for collection, it became thereby not only responsible for any negligence which it might itself commit, but also for any that might be committed by the sub-agent which it employed. As between the plaintiff and the Crawford County Bank the negligence of the defendant was chargeable to the plaintiff. The loss which ensued from that negligence, when it appears that the Crawford County Bank had sufficient funds in the hands of its drawee to pay the draft, and that those funds were lost by the neglect of the defendant and the subsequent insolvency of the drawee, is of necessity the full amount of the draft, for that is the measure of the liability of the plaintiff to the Crawford County Bank assuming that the plaintiff was merely the agent of that bank.

Upon the facts found in the former as well as in the present case, that liability became a fixed and absolute one, because the defendant was chargeable with the consequences of the negligence of its own servant which had resulted in the loss of the fund out of which the draft was payable. Under the circumstances of this case the fact that the legal formalities, sufficient to charge the drawer of a draft where liability exists, were taken by the defendant became of no moment. Those ceremonies were utterly idle and useless, for no liability whatever existed on the part of the Crawford County Bank to the plaintiff when it is shown that the funds of that bank were lost by the negligence of the plaintiff's agent. According to the law of this case, as established by the Court of Appeals, it would have been a work not merely of supererogation, but of idle folly for the plaintiff to have attempted by suit to compel the Crawford County Bank, the drawer of the draft, to respond to it for the amount, whether it had been taken upon an indebtedness or merely for the purpose of collection. In our view, therefore, the evidence introduced for the purpose of showing that the drawer had been

legally charged under the laws of Pennsylvania was altogether unnecessary and immaterial.

But assuming that it was necessary, we do not see why it was not proper to prove the fact that a suit had been brought between the plaintiff and the Crawford County Bank, and upon substantially the same facts now found by the learned referee in this case, adjudged by the court of Pennsylvania adversely to the plaintiff. It showed at least that the rights of the drawer and the plaintiff, as between themselves, had been finally settled by the adjudication of a competent tribunal; and whatever doubts there may be as to the right of the plaintiff to prove the law of Pennsylvania by producing the judgment in that action, we do not see any ground for holding that it was a fatal error on the part of the referee to receive the evidence.

We do not consider the effect of the evidence or the propriety of the finding of the referee on the subject of the custom or usage of business in respect of the collection of such drafts, because we consider the materiality of that question to have been, of necessity, disposed of by the Court of Appeals.

Our examination of this case leads us to the conclusion that under the law, as settled by the Court of Appeals, the report of the referee and the judgment entered thereon must be affirmed.

Brady, J., concurred.

Present — Davis, P. J., and Brady, J.

Judgment affirmed.