### ZALOOM v. GANIM et al.

(Supreme Court, Appellate Term. April 27, 1911.)

1. BILLS AND NOTES (§ 537*)—CHECKS—PRESENTATION—REASONABLE DILIGENCE.

Where no question of fact is in dispute, the determination of what is reasonable diligence in presenting a check for payment, in order to charge the drawer, is one of law for the court.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1894; Dec. Dig. § 537.*]

2. BILLS AND NOTES (§ 404*)—CHECKS—PRESENTMENT—"REASONABLE"—"Reasonable Time"—"Usage of Trade."

Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 322, provides that a check must be presented for payment within a reasonable time after its issue. Section 4 provides that, in determining what is a reasonable time, regard is to be had to the nature of the instrument, any usage of trade or business with respect to such instruments, and the facts of the particular case. Held that, in view of the custom of the New York Clearing House Association, the deposit of a check received

after banking hours, on the morning of the day after its receipt, and its presentment for payment in the usual course of business by the bank of deposit on the day following, showed due diligence in presentment; "reasonable" being a relative term, to be determined according to the circumstances of the case, "reasonable time" meaning "so much time as is necessary under the circumstances conveniently to do what the contract requires," and "usage of trade" meaning a known, uniform, and reasonable usage, not contrary to law or public policy.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1091–1103; Dec. Dig. § 404.*

For other definitions, see Words and Phrases, vol. 7, pp. 5953, 5977–5983; vol. 8, p. 7780, 7223.]

3. BANKS AND BANKING (§ 138*)—CHECKS—IDENTIFICATION OF PAYEE.

A bank, paying a check, is required to satisfactorily identify the payee.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. § 138.*]

Delany, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Selim F. Zaloom against Beshara Ganim and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before HENDRICK, LEHMAN, and DELANY, JJ.

Benjamin Patterson, for appellants.
Samuel J. Siegel, for respondent.

HENDRICK, J. A check is defined by section 321 of the negotiable instruments law (Consol. Laws 1909, c. 38) as "a bill of exchange drawn on a bank, payable on demand." The same section provides:

"Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

Section 322 limits the time within which a check must be presented in the following language:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

As to a reasonable time the law (section 4) reads:

"In determining what is a *reasonable time* or an *unreasonable time*, regard is to be had to the nature of the instrument, *the usage of trade or business* (if any) with respect to such instruments, and *the facts of the particular case.*"

The facts found by the trial justice must be regarded as the facts of this particular case, and are in part as follows: The defendant gave his check, dated August 4, 1910, drawn on the European-American Bank in this city, and delivered it between 4 and 5 o'clock in the afternoon of the day of its date to the plaintiff in payment of a debt. Plaintiff on the following day, August 5, 1910, deposited the check to his account in his own bank of deposit, the National Reserve Bank, which is also located in this city. On August 6, 1910, the National Reserve Bank, in the regular course of business, presented the check to the European-American Bank for payment, where payment was refused,

---

because of the fact that the State Banking Department had taken possession of the bank, which had suspended payment. Had the check been presented on August 5, 1910, it would have been paid.

[1] There being no question of fact in dispute, the determination of what is reasonable diligence in presenting the check for payment, in order to charge the drawer, is one of law for the court. National Bank v. Zimmerman, 185 N. Y. at page 217, 77 N. E. 1020.

[2] The negotiable instruments law does not define the period which may elapse between the giving and presentment of a check, but makes it incumbent on the payee to present it within a reasonable time. Section 322. "Reasonable" is a relative term, to be determined according to the circumstances of the case. 33 Cyc. 1560. "Reasonable time" means:

"So much time as is necessary under the circumstances conveniently to do what the contract requires should be done." Hinds v. Kellogg (Com. Pl.) 13 N. Y. Supp. 922.

Lord Ellenborough, in a leading case (Rickford v. Ridge, 2 Campb. 537), discussing the rules of law applicable to checks, their presentment, notice, and protest as between drawer and payee, says:

"The rule to be adopted must be a rule of convenience."

Usage of trade is a course of dealing; a mode of conducting transactions of a particular kind. 2 Bouvier's Law Dictionary, 1182. By the phrase "usage of trade" the law means usage fixed in the commercial law. It must be known, uniform, certain, reasonable, and not contrary to law or opposed to public policy.

"The true test of a commercial usage is its having existed a sufficient length of time to become generally known, and to warrant a presumption that contracts are made in reference to it." Smith v. Wright, 1 Caines, 43, 2 Am. Dec. 162.

Before the establishment of the Clearing House Association on October 11, 1853, there were 52 banks in this city, each sending messengers back and forth to present checks for payment, and, as there was no national currency, balances had to be paid in gold coin. The labor of counting and carrying this was so onerous that actual transfers of cash were made but once a week, although accounts were balanced on the pass books and bills were exchanged daily. The bags of coin were so heavy and precious that they were often transported in wagons guarded by militia. Since the formation of the Clearing House Association, the obligations of almost the total number of banks in this city are balanced daily, with the least possible transfer of actual cash from debtor to creditor banks. The messengers of the various banks meet daily at a stated time at the Clearing House, to adjust balances of accounts and receive and pay differences, thus obviating the confusion, labor, expense, and danger of loss which would be incident to the presentment of hundreds of thousands of checks daily to the various banks in this city. Encyclopedia Americana.

The annual report for the year 1910 of the manager of the New York Clearing House Association shows that in 1854 the average daily clearings through the New York Clearing House were $19,104,504.94,

and the clearings for that year were $5,750,455,987.06. In 1906 the average clearings were $342,422,772.57, and the total for that year was $103,754,100,091.25. In 1910 the daily average clearings were $338,-461,911.11, and the total for that year was $102,553,959,069.28. The average number of checks that pass daily through the New York Clearing House is 250,000. The Clearing House Association is now composed of 31 national banks and 18 state banks. There are 31 banks and trust companies in the city of New York and vicinity, not members of the Association, which make their exchanges through banks which are members of the Association—a total of almost every bank and trust company in this city.

[3] This usage of trade and business in presenting checks for payment has became incorporated into the banking business of the state and country, and would be seriously affected if immediate presentment to the paying bank were required. Bearing in mind the general commercial law that the paying bank is required to satisfactorily identify the payee (Meyers v. Brown [App. Div. Feb., 1911] 127 N. Y. Supp. 374, reported in the New York Law Journal February 8, 1911) and bearing in mind, also, the vast number of checks daily used in the city of New York, it is apparent that, if the banks and trust companies of New York City were required, immediately upon their receipt, to present deposited checks to the banks upon which they are drawn for payment, confusion amounting almost to chaos would be the result.

In Hooker v. Franklin, 2 Bosw. 500 (affirmed, Court of Appeals, October, 1861), Bosworth, J., says:

"A rule which required all banks in the city of New York to present for payment all the checks deposited by their customers on the day of their deposit would compel them to decline business of that character, and defeat the objects, in many cases, for which deposits are made, and put an end to certain facilities, which result from obtaining credit for the amount of a check, for the day of its deposit, without providing for its payment until the following morning."

It is further said:

"Certainly no laches can be imputed to a depositary, receiving it for presentment and collection, who, in presenting it on the next day after its receipt, acts in conformity with the regular and established course of business in such cases."

I have not overlooked the cases which hold that a check on a bank in the city in which the payee resides must be presented for payment not later than the day following its receipt. These cases may be distinguished from the case under review. The facts and circumstances in each case must in a great degree govern the rule to be applied, and the facts in those cases differ materially from those of the present case. They are briefly as follows:

In Smith v. Miller, 43 N. Y. 171, 3 Am. Rep. 690, the payee of a draft, upon presenting it for payment, by surrendering it to the drawee and accepting a check for the amount, which he neglected to present until the following day, discharged the *drawer of the draft.*

In Carroll v. Sweet, 128 N. Y. 19, 27 N. E. 763, 13 L. R. A. 43, a debtor paid his debt with a check of a *third party,* indorsed by himself. By the neglect of the creditor to present the check for payment until

nine days thereafter, the debtor was discharged from liability as *indorser,* irrespective of any question of loss or injury.

In Kramer v. Grant, 60 Misc. Rep. 110, 111 N. Y. Supp. 709, the attorney for the payee of a check (and for the purpose of that case, his agent) appropriated and negotiated the check, instead of depositing it *for collection* within 24 hours after it was received, and the court does not even intimate that presentment for payment must be made within 24 hours.

In Murphy v. Levy, 23 Misc. Rep. 147, 50 N. Y. Supp. 682, the payee delivered the check to a third party in payment of his debt, and it was not presented by the third party for payment until four days thereafter.

In Dehoust v. Lewis, 128 App. Div. 131, 112 N. Y. Supp. 559, the check was received in payment of the debt on October 12th, and was not deposited by an indorsee until October 23d; all of the parties residing in the same city.

Upon the facts in this case, the deposit of the check on the morning of the day after its receipt, it having been received after banking hours, and its presentment for payment in the usual course of business by the bank of deposit on the day following, shows due diligence in the presentment of the check. I am confirmed in the views herein expressed by the opinion in Loux & Son v. Fox, 171 Pa. 68, at pages 72, 73, 33 Atl. 190, a case almost identical with the one under consideration.

The judgment should be affirmed, with costs.

LEHMAN, J., concurs.

DELANY, J. (dissenting). This action was brought to recover the amount of a check made by the defendants to the order of plaintiff on the European-American Bank in this city, which suspended before the hour for opening of business on August 6, 1910. The check was dated August 4, 1910, and was delivered to plaintiff on that day; the defendants claiming at 9 o'clock in the morning, but the plaintiff between 4 and 5 o'clock in the evening. The judgment was for plaintiff, and, if the time in dispute is to be considered as a determining factor in the case, we must assume here that the court below found as a fact that the check was received by the plaintiff at the later hour. The plaintiff on the following day, August 5th, deposited the check to his account in the National Reserve Bank in this city. That bank did not present it to the European-American Bank until the day after, August 6th, when the latter had closed.

I am constrained to dissent from the judgment of the court, because it seems to me repugnant to the law as laid down in an unvarying line of decisions in practically every judicature recognizing the common law, and because the statutes in this state have not occasioned any change so far as the phase here presented is concerned. Most of the decisions alluded to were pronounced before the enactment of the negotiable instruments act; but the rule which may be drawn from them requires no modification in statement on that account, since the act, so far as applicable to the case under consideration, is merely declaratory of the common law.

The rule thus established regarding the time within which a check drawn on a bank in the same city as that of the payee must be presented may be a rigorous one; but, whether so or not, it has a time-honored acceptance, and may be assumed as a condition recognized as controlling in business relations. The payee must present the check to the bank for payment, it is true, within a reasonable time; but the stringent requirement emphasized in every case is promptness in presentation, and what time, as a matter of law, must elapse before such presentation, in order to justify a finding of want of promptness, must depend upon how we can harmonize the various expressions of the courts on the question. Some courts have held that a check is to be considered like an inland bill of exchange, and should be governed by the same rules. Smith v. Janes, 20 Wend. 192, 32 Am. Dec. 527. Others that a check is to be presented within twenty-four hours after its receipt. Kramer v. Grant, 60 Misc. Rep. 111, 111 N. Y. Supp. 709. Others, again, that it is to be presented on the same day or the following day. Smith v. Janes, supra; Dehoust v. Lewis, 128 App. Div. 132, 112 N. Y. Supp. 559; Carroll v. Sweet, 128 N. Y. 22, 27 N. E. 763, 13 L. R. A. 43. Others still, within business hours of the following day. Murphy v. Levy, 23 Misc. Rep. 149, 50 N. Y. Supp. 682. Nor is one required to make this presentation for payment excused for failure to do so by the fact that he has transferred it to another for collection. Kramer v. Grant, supra; Smith v. Miller, 43 N. Y. 171, 177.

The plaintiff in the case at bar, therefore, cannot claim as an excuse that for his own convenience he deposited the check in another bank for collection. This act would, in the usual course of business, necessarily postpone its collection for one additional day. If prompt collection required its presentation the day following its receipt, he adopted this course at his peril. If a rule is to be deduced from all the cases cited, I think that it may be stated thus:

"The promptness enjoined requires that, in the absence of any extraordinary circumstance, the holder of a check on a bank in the same city should present it for payment not later than the closing hours of the bank's business day following its receipt."

This case is extremely close, but I nevertheless believe that it comes within the rule that, where one is willing to accept payment in that form, he must, to save himself harmless, act with the required promptness. A consideration which might be a makeweight in determining whether this strict rule should be applied here is this: The plaintiff intrusted the collection of the check to slower agencies than direct presentation, and he thus relied upon the stability of one bank, or the quickness of action of the other. This reliance should work to his own detriment, rather than to that of the maker of the check, and it may well be that some such reason lies at the base of the decisions.

The case at bar presents no feature which would require consideration on the question of "reasonable time," unless it is found in the negotiable instruments act, or affected by marked changes in the necessities or usages of the present-day business world. The negotiable instruments act of this state, regarding what must be considered in determining what is or is not a reasonable time, has not changed the sub-

stance of the pre-existing law on this subject.   Dehoust v. Lewis, supra; Kramer v. Grant, supra.   Its terminology is that of the English bills of exchange act, 1882 (45 & 46 Vict. c. 61), which is in fact the basis of all similar statutes in the United States.   Its verbiage is taken from the courts of common law.   Huffcut on Negotiable Instruments gives an exhaustive treatise on the origin of these statutes, and the English decisions, since the enactment of the bills of exchange act, have not varied the law on this subject.

It is a general rule that, when a foreign statute is re-enacted, it is to be understood as it has been interpreted by the courts of the country from which it is taken.   Waterford v. People, 9 Barb. 161; Ryalls v. Mechanics' Mills, 150 Mass. 191, 22 N. E. 766, 5 L. R. A. 667; Commonwealth v. Hartnett, 3 Gray (Mass.) 450.   And it is fair to infer that the Legislature intended that the words used should have the meaning given them by the courts.   Bellegarde v. Union Bag & Paper Co., 90 App. Div. 577, 86 N. Y. Supp. 72.   Applying this test, the common law may be said not to have undergone any change, so far as this question is concerned, and all our decisions on this matter are as applicable after as before the statutes were enacted.

The Massachusetts statute is identical in language with our negotiable instruments act, and the Supreme Court of that state in a case decided in 1907 holds:

"The negotiable instruments act provides generally, * * * as the judge said, that 'in determining what is a "reasonable time," or an "unreasonable time," regard is to be had to the nature of the instrument, the usage of trade or business, if any, with respect to such instruments, and the facts of the particular case.'   This, however, would not seem to lay down or to establish any new rule.   The nature of the instrument and the facts of the particular case have always been considered when passing upon the question of reasonable or unreasonable time.   In deciding therefore, whether this check was presented within a reasonable time, if presented on Friday, resort must be had to the rules which have been hitherto established in similar cases.   And one of the rules which has been established is that, where the drawer and drawee and the payee are all in the same city or town, a check, to be presented within a reasonable time, should be presented at some time before the close of banking hours on the day after it is issued, and that its circulation from hand to hand will not extend the time of presentment to the detriment of the drawer."   Gordon v. Lovine, 194 Mass. 421, 80 N. E. 505, 10 L. R. A. (N. S.) 1153, 120 Am. St. Rep. 565, citing numerous cases in other states to the same effect.

The establishment of a clearing house has undoubtedly simplified banking operations; but, whether it has or not, the law is unaffected by it, for a number of the decisions referred to have been rendered since that event, and some of them arose out of transactions between parties in the city of New York.   Dehoust v. Lewis, supra; Kramer v. Grant, supra; Carroll v. Sweet, supra; Williams v. Brown, 53 App. Div. 486, 65 N. Y. Supp. 1049; Grant v. MacNutt, 12 Misc. Rep. 21, 33 N. Y. Supp. 62; Murphy v. Levy, 23 Misc. Rep. 147, 50 N. Y. Supp. 682; Smith v. Miller, supra.

The case of Loux & Son v. Fox, 171 Pa. 68, 33 Atl. 190, cited in the opinion of this court, is contrary to the entire trend of the decisions in that state, which are in tenor the same as those in this state (National Bank v. Weil, 141 Pa. 460, 21 Atl. 661); and it is inconclusive,

in that the court does not disavow the rule, but affects to be in accord with it, resorting to the pretext of striking out the day of receipt as not to be counted.  The court says:

"Considering the hour of the day when the check was delivered to the defendants, it is practically the same as if in express terms it had been made payable on the following day.  There is, therefore, no good reason why it should not be treated as received on the 7th, instead of the 6th, of May, 1891."

I do not see that, either by reason of the statute, or any local usages which have existed for years, or any peculiar necessities of the situation, there is sufficient to justify what seems to me to be a departure from the rule which has obtained here and elsewhere since checks were in vogue.  Moule v. Brown, 33 Eng. C. L. Rep. 705; Alexander v. Burchfield, 49 Eng. C. L. Rep. 1060.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.